| | |
|---|---|
| 1 | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP |
| |   A Limited Liability Partnership |
| 2 |   Including Professional Corporations |
| | DANA J. DUNWOODY, Cal. Bar No. 119696 |
| 3 | ddunwoody@sheppardmullin.com |
| | 12275 El Camino Real, Suite 200 |
| 4 | San Diego, California  92130-2006 |
| | Telephone:    858.720.8900 |
| 5 | Facsimile:     858.509.3691 |
| 6 | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP |
| |   A Limited Liability Partnership |
| 7 | Including Professional Corporations |
| | BRIAN R. BLACKMAN, Cal. Bar No. 196996 |
| 8 | bblackman@sheppardmullin.com |
| | Four Embarcadero Center, 17th Floor |
| 9 | San Francisco, California 94111-4109 |
| | Telephone:    415.434.9100 |
| 10 | Facsimile:     415.434.3947 |
| 11 | Attorneys for Defendant |
| | NORDSTROM, INC. |

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| ROBERT CAPP, on behalf of himself and others similarly situated, | Case No.  13-CV-00660 MCE (AC) |
| Plaintiff, | **NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR, IN THE ALTERNATIVE, TO STRIKE PORTIONS OF COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| NORDSTROM, INC., a Washington Corporation; and DOES 1 through 50, inclusive, | [Fed. R. Civ. P. 12b)(6) and 12(f)] |
| Defendants. | Date:          May 16, 2013<br>Time:          2:00 PM<br>Courtroom: 7 |
| | The Honorable Morrison C. England |

**NOTICE OF MOTION**

TO THE HONORABLE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 16, 2013 at 2:00 PM, or as soon thereafter as counsel may be heard in Courtroom 7 of the above-entitled Court, located at the Robert T. Matsui Federal Courthouse, 501 I Street, Sacramento, California 95814, defendant Nordstrom, Inc. ("Nordstrom"), will and does move to dismiss plaintiff Robert Capp's ("Plaintiff") Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and, in the alternative, to strike Plaintiff's request for injunction and jury demand pursuant to Fed. R. Civ. P. 12(f).

This Motion is made on the grounds that Plaintiff's Complaint alleges that Nordstrom violated California Civil Code § 1747.08 ("Song-Beverly") by collecting his email address in conjunction with a credit card transaction and then sending unsolicited commercial messaging to his email account. Federal law, however, preempts Plaintiff's claim. In particular, the Controlling the Assault of Non-Solicited Pornography and Marketing Act ("CAN-SPAM") expressly preempts state laws regulating the collection and use of email addresses. Nordstrom also moves for an order dismissing or striking Plaintiff's request for an injunction because it is not authorized in a private action under Song-Beverly and jury demand because neither Song-Beverly nor the Seventh Amendment of the U.S. Constitution guarantees the right to a jury trial on Song-Beverly claims, which are equitable in nature.

This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, all other pleadings, papers, records and documentary materials on file or deemed to be on file in this action, those matters of which this Court may take judicial notice, and such further evidence and argument as the Court may allow at the hearing on this Motion.

Dated: April 11, 2013          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

                               By     */s/ Brian R. Blackman*
                                      DANA DUNWOODY
                                      BRIAN R. BLACKMAN
                                      Attorneys for
                                      Defendant NORDSTROM, INC.

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   SUMMARY OF ALLEGATIONS ..................................................................... 2

III.  LEGAL STANDARDS ....................................................................................... 3

IV.   ARGUMENT ...................................................................................................... 3

      A.   Song-Beverly Background ....................................................................... 3

      B.   CAN-SPAM Preempts Song-Beverly As It Relates To Collection And Use Of Email Addresses For Commercial Purposes. ............................................ 4

      C.   Plaintiff's Non-Statutory Requests For Relief And Jury Demand Should Be Dismissed Or Stricken From The Complaint. ............................................ 9

V.    CONCLUSION ................................................................................................. 10

**TABLE OF AUTHORITIES**

**Page**

FEDERAL CASES

*Air Conditioning and Refrigeration Institute*
   410 F.3d 492 (9th Cir. 2005) .................................................................................................. 5

*Balistreri v. Pacifica Police Dep't*
   901 F.2d 696 (9th Cir. 1990) .................................................................................................. 3

*Bell Atlantic Corp. v. Twombly*
   550 U.S. 544, 127 S. Ct. 1955 (2007) .................................................................................... 3

*Congoleum Corp. v. DLW Aktiengesellschaft*
   729 F.2d 1240 (9th Cir. 1984) ................................................................................................ 7

*Epstein v. Washington Energy Co.*
   83 F.3d 1136 (9th Cir. 1996) .................................................................................................. 3

*Facebook Inc. v. ConnectU LLC*
   489 F. Supp. 2d 1087 (N.D. Cal. May 21, 2007) ................................................................ 6, 8

*Gass v. Best Buy Co., Inc.* (C.D. Cal. 2012)
   279 F.R.D. 561 ....................................................................................................................... 4

*Gordon v. Virtumundo, Inc.*
   575 F.3d 1040 (9th Cir. 2009) ........................................................................................ 4, 5, 6

*Grantham v. Avondale Indus.*
   964 F.2d 471 (5th Cir. 1992) .................................................................................................. 7

*Haug v. PetSmart, Inc.*
   2010 U.S. Dist. LEXIS 84739 (E.D. Cal. July 23, 2010) .................................................. 9, 10

*Kleffman v. Vonage Holding Corp.*
   2007 WL 1518650 (C.D. Cal. May 23, 2007) ........................................................................ 5

*Korn v. Polo Ralph Lauren Corp.*
   644 F. Supp. 2d 1212 (E.D. Cal. 2008) .............................................................................. 9, 10

*Omega World Travel, Inc. v. Mummarphics, Inc.*
   469 F.3d 348 (4th Cir. 2006) .................................................................................................. 5

*In re Payless Shoesource, Inc.*
   2007 U.S. Dist. LEXIS 93677 (E.D. Cal. Sept. 11, 2009) .................................................... 10

*Saulic v. Symantec Corp.*
   596 F. Supp. 2d 1323 (N.D. Cal. 2009) ................................................................................ 10

*Shabaz v. Polo Ralph Lauren*
  586 F. Supp. 2d 1205 (C.D. Cal. 2008) .................................................................. 10

*Sidney-Vinstein v. A.H. Robins Co.*
  697 F.2d 880 (9th Cir. 1983) ................................................................................... 3

*Thompson v. Paul*
  657 F. Supp. 2d 1113 (D. Az. 2009) ....................................................................... 3

*Whittlestone, Inc. v. Handi-Craft Co.*
  618 F.3d 970 (9th Cir. 2010) ................................................................................... 3

CALIFORNIA CASES

*People v. Thomas*
  25 Cal.2d 880 (1945) ............................................................................................... 9

*Pineda v. Williams-Sonoma, Inc.* (2011)
  51 Cal.4th 524 ..................................................................................................... 1, 4

*Powers v. Pottery Barn, Inc.*
  177 Cal. App. 4th 1039 (2009) ....................................................................... 7, 8, 9

*Stephen K. v. Roni L.*
  105 Cal. App. 3d 640 ............................................................................................... 7

U.S. CONSTITUTION

Seventh Amendment ....................................................................................................... 10

FEDERAL STATUTES

15 U.S.C.
  § 7701 *et seq*. ........................................................................................................... 1
  § 7701(a)(1) .............................................................................................................. 5
  § 7701(a)(2) .............................................................................................................. 5
  § 7701(a)(11) ............................................................................................................ 5
  § 7707(b) .................................................................................................................. 1
  § 7707(b)(1) ......................................................................................................... 6, 7
  § 7707(b)(2) .............................................................................................................. 7

CALIFORNIA STATUTES

Business & Professions Code
  § 17529.4 .................................................................................................................. 6

Civil Code
    § 1747.08 .................................................................................................. 1, 3, 4, 9, 10
    § 1747.08(b) ............................................................................................................... 3
    § 1747.08(c)(3)-(4) .................................................................................................... 4
    § 1747.08(c)(4) ....................................................................................................... 7, 8
    § 1747.08(e) .......................................................................................................... 4, 7, 9
    § 1747.08(f) ................................................................................................................ 7

FEDERAL RULES

Federal Rule of Civil Procedure
    Rule 12(b)(6) .............................................................................................................. 3
    Rule 12(f) ................................................................................................................... 3

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

This case is one in an ever expanding avalanche of actions brought by the same general group of plaintiff attorneys in the wake of the California Supreme Court's decision in *Pineda v. Williams-Sonoma, Inc.* (2011) 51 Cal.4th 524, which expanded the scope of personal identification information under the Song-Beverly Credit Card Act of 1971, Civil Code § 1747.08 ("Song-Beverly" or "Section 1747.08"), to include customers' zip codes.  What is different or unique about this case, as compared with the vast bulk of Song-Beverly cases that preceded it, is that the only alleged "violation" here is the collection and use of email.

Plaintiff Robert Capp ("Capp" or "Plaintiff") alleges that Nordstrom collected his email address during a credit card transaction for the special purpose of sending him a receipt by email (also known as an "e-receipt").  That special purpose is beneficial to the customer and also is incidental but related to the credit card transaction.[1]  Capp further alleges that Nordstrom later used that email address to send him regular and frequent commercial messaging.  He contends that Nordstrom's collection and use of his email address for purposes of commercial messaging violates Song-Beverly.

However, with the ever increasing use of commercial email messaging, Congress enacted the Controlling the Assault of Non-Solicited Pornography and Marketing ("CAN-SPAM") Act of 2003, 15 U.S.C. § 7701 *et seq.*, to create a single, national standard for the regulation of commercial messaging.  To attain its goal of a nationwide standard, Congress included a broad preemption clause in CAN-SPAM that covers any state law aimed at regulating the collection and use of email for commercial purposes, saving only those laws or regulations that target fraud or deception – in other word traditional tort claims based in misrepresentation.  15 U.S.C. § 7707(b).  That is exactly

---

[1]   Capp's complaint contains erroneous statements such as his alleged belief that he was required to provide his email to complete the transaction and that Nordstrom shares its customer data with third parties to allow them to market to Nordstrom's customers.  If it gets that far, these statements will be demonstrated to be both erroneous and unsupportable given Nordstrom's point of sale and other systems, but that is beyond the scope of this motion as all factual statements, no matter their falsity, must be considered true.

-1-

Plaintiff's claim against Nordstrom.  By alleging that Nordstrom violated Song-Beverly through its collection (albeit legal collection) and use of his email address, Plaintiff squarely pleaded his claim into territory preempted by CAN-SPAM.  Thus, the Court should grant Nordstrom's motion and dismiss Plaintiff's claim.

## II.     SUMMARY OF ALLEGATIONS

At an unidentified point in the last 12 months, Plaintiff allegedly went to a Nordstrom retail store in Roseville and purchased items.  Dkt. No. 1, Exh. 2 (the "Complaint") ¶¶13-14.

Plaintiff alleges that, upon presenting the items for purchase, the Nordstrom sales associate scanned the products with a portable device and informed Plaintiff of the amount due.  Complaint ¶¶14-17.  Plaintiff provided the associate with his credit card, which the associate swiped into the portable device.  *Id.* at ¶17.  The associate then allegedly asked Plaintiff to provide his email address if he wanted his receipt sent to him by email (also known as an "e-receipt").  *Id*. at ¶18.  Plaintiff provided his email address for purposes of getting an e-receipt, which the associate typed into the device.  *Id.*

Plaintiff signed for the purchase, using his finger, on the device and left the store with his items.  *Id*. at ¶¶20-21.  Plaintiff later received "an email with his receipt." *Id.* at ¶23.  Plaintiff alleges that he "also received, and continues to receive, regular and frequent promotional communications and materials" from Nordstrom and, "in fact, [Nordstrom] now sends Plaintiff purely promotional emails on a near daily basis." *Id.*  He further alleges that he has experienced a general increase in the amount of commercial email he receives and, therefore, believes Nordstrom may have sold his email address.  *Id.*

Based upon these allegations, Plaintiff brings a single claim against Nordstrom for violation of Song-Beverly.  Complaint at ¶¶13-23 and ¶¶31-36.  He seeks, among other things, civil penalties and an order enjoining Nordstrom from "utilizing an 'Information Capture Policy'" to collect personal identification information.  Complaint, Prayer ¶2.  Plaintiff also includes a jury demand in his caption.  Dkt. No. 1, Ex. 2 at p. 1.

### III. LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted. "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). While the allegations of a complaint are generally accepted as true, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007). "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). Given these pleading requirements, Plaintiff has failed to state facts sufficient to establish a viable claim for violation of Song-Beverly.

A party may also move to dismiss damages or other types of requested relief that are precluded as a matter of law. *See* Fed. R. Civ. Proc. 12(b)(6); *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010). Alternatively, a court may strike certain allegations within a claim pursuant to Rule 12(f) if the underlying claim is not itself challenged. *Thompson v. Paul*, 657 F. Supp. 2d 1113, 1129 (D. Az. 2009) (converting 12(b)(6) motion to 12(f) motion). A 12(f) motion to strike's function "is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Rule 12(f) provides that the court may strike from a pleading any immaterial or impertinent matter. Fed. R. Civ. Proc. 12(f).

### IV. ARGUMENT

**A. Song-Beverly Background**

Song-Beverly prohibits a business in certain circumstances from requesting "personal identification information" in connection with a credit card transaction. Cal. Civ. Code § 1747.08. Song-Beverly defines personal identification information as "information concerning the cardholder…, including, but not limited to, the cardholder's address and telephone number." Cal. Civ. Code § 1747.08(b). The California Supreme Court has interpreted the language "personal identification information" as including a customer's zip code because, in part, it is part of the

-3-

customer's address.  *See Pineda v. Williams-Sonoma Stores, Inc.*, 51 Cal. 4th 524, 534 (2011).  The same is not true of email addresses.  Nordstrom is not aware of, and has not found, any authority finding that an email address constitutes "personal identification information" for purposes of Section 1747.08.[2]

Regardless, Song-Beverly does not prohibit the collection of customer information in all instances.  The Legislature expressly carved out several exceptions to liability under Section 1747.08, including those instances when collection of the customer information is necessary for a special purpose incidental but related to the credit card sales transaction.  Civ. Code § 1747.08(c)(3)-(4); *Gass v. Best Buy Co., Inc.* (C.D. Cal. 2012) 279 F.R.D. 561, 573 ("requesting [personal identification information] for the incidental purpose of enrolling a customer in a rewards program is not a violation of the Act.").  The statute also provides a safe harbor for any violations resulting from a bona fide error.  Civ. Code § 1747.08(e).

**B.     CAN-SPAM Preempts Song-Beverly As It Relates To Collection And Use Of Email Addresses For Commercial Purposes.**

CAN-SPAM took effect in January 2004 and "was enacted in response to mounting concerns associated with the rapid growth of spam e-mails."  *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1047 (9th Cir. 2009).  Congress saw both benefits and burdens to this growth.  It found email's "low cost and global reach make it extremely convenient and efficient, and offer unique

---

[2]     This motion addresses the preemptive effect of CAN-SPAM on Song Beverly email marketing claims and does not address at this time the question of whether an email address indeed constitutes personal identification information under Section 1747.08.  Nordstrom denies that an email address constitutes personal identification information.  There is nothing inherent in the content of an email address that necessarily concerns the credit cardholder and, in many cases, it provides no identifying information at all – (e.g. 1234abc@hotmail.com).  There is no accepted or uniform convention for choosing one's email address.  This feature of email preserves anonymity on the internet, which is one of its many intended advantages.  At most, an email address may contain the user's name, but his or her name is information set forth on the face of the credit card and, therefore, expressly outside the scope of "personal identification information" under Song-Beverly.  This issue is to be determined another day.  Plaintiff alleges, however, that an email address constitutes personal identification information, which Nordstrom denies, and that Nordstrom's collection and use of email addresses violates Song-Beverly.  Complaint ¶¶13-23.  Thus, under Plaintiff's legal theory, Song-Beverly specifically prohibits the collection and use of email addresses for marketing purposes.  *Id.*  This legal theory is preempted by CAN-SPAM.

opportunities for the development and growth of frictionless commerce." 15 U.S.C. § 7701(a)(1). It also found that "the convenience and efficiency of electronic mail are threatened by the extremely rapid growth in the volume of unsolicited commercial electronic mail." 15 U.S.C. § 7701(a)(2). Congress further noted that the individual State's attempts at regulating commercial email messaging had led to a "patchwork of liability standards" that had proven ineffective.

> Many States have enacted legislation intended to regulate or reduce unsolicited commercial electronic mail, but these statutes impose different standards and requirements. As a result, they do not appear to have been successful in addressing the problems associated with unsolicited commercial electronic mail, in part because, since an electronic mail address does not specify a geographic location, it can be extremely difficult for law-abiding businesses to know with which of these disparate statutes they are required to comply.

15 U.S.C. § 7701(a)(11). Based on these finding, Congress enacted CAN-SPAM to create a single national standard. *See Gordon,* 575 F.3d at 1047-48; *see also Omega World Travel, Inc. v. Mummarphics, Inc.*, 469 F.3d 348, 355 (4th Cir. 2006) ("Congress implemented these findings by creating a national standard…") ; *see also Kleffman v. Vonage Holding Corp.*, 2007 WL 1518650, at *3 (C.D. Cal. May 23, 2007) ("Congress's legislative findings indicate a reluctance to force 'law-abiding' businesses to conform to a patchwork of state laws.")

In doing so, Congress "plainly intended to preempt state laws purporting to regulate certain aspects of electronic mail communication."[3] *Kleffman,* 2007 WL 1518650, at *3. In fact, Congress included an express preemption clause which "broadly preempt[s] state regulation of commercial email with limited, narrow exceptions." *Gordon,* 579 F.3d at 1061. CAN-SPAM's preemption clause provides:

> This chapter supersedes any statute, regulation, or rule of a State or political subdivision of a State that expressly regulates the use of electronic mail to send commercial messages, except to the extent that any such statute regulation or rule prohibits falsity or deception

---

[3] The congressional purpose of CAN-SPAM—the "ultimate touchstone" in every preemption case—is found in the language of the preemption clause, the statutory framework surrounding it, and the structure and purpose of the statute as a whole. *Omega World Travel v. Mummagraphics*, 469 F.3d 348, 352 (4th Cir. 2006) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)); *Air Conditioning and Refrigeration Institute*, 410 F.3d 492, 495 (9th Cir. 2005).

in any portion of a commercial electronic mail message or information attached thereto.

15 U.S.C. § 7707(b)(1).  The Ninth Circuit has concluded that this provision must be interpreted "in a manner that preserves Congress's intended purposes – i.e., to regulate commercial email 'on a nationwide basis,' 15 U.S.C. 7701(b)(1), and to save from preemption only 'statutes, regulations, or rules that target *fraud or deception*." *Gordon*, 575 F.3d at 1061-1062 (emphasis original).  Thus, the only state laws, regulating the use of email to send commercial messages, that are not preempted by CAN-SPAM are those that prohibit "falsity or deception" in commercial email messages—in other words, those actions sounding in tort that involve misrepresentation. *Id.* at 1062 ("we are likewise persuaded that the exception language … refers to 'traditionally tortious or wrongful conduct.'") (quoting Omega, 469 F.3d at 354).

Importantly, CAN-SPAM does not simply regulate the use of email addresses, i.e., the sending of commercial messages, but also the collection of email addresses for commercial purposes.  *See Facebook Inc. v. ConnectU LLC*, 489 F. Supp. 2d 1087, 1093-94 (N.D. Cal. May 21, 2007).  In *Facebook*, plaintiff sued its competitor for accessing and collecting email addresses off its website and then sending unsolicited messages to those addresses.  *Facebook,* 489 F. Supp. 2d at 1089-1090.  Plaintiff alleged, *inter alia*, a claim under California's Business & Professions Code section 17529.4, which makes it unlawful for "any person or entity to collect electronic mail addresses posted on the Internet if the purpose of the collection is for the electronic mail addresses to be used to" send an unsolicited commercial email advertisement to or from California.  *Id.* at 1093.  Plaintiff argued that CAN-SPAM did not preempt this claim because the California statute primarily regulated the collection of email addresses.  *Id.* at 1093-1094.  The district court rejected this argument, holding that CAN-SPAM preempted this section, regardless of whether emails were actually sent, since the email addresses were collected for a commercial purpose.  *Id*.  Thus, CAN-SPAM preemptions apply both to the collection and use of email addresses for commercial purposes.

Based on these rules and interpretations, CAN-SPAM preempts Plaintiff's claim for violation of Song-Beverly.  This is a collection and use case relating to Plaintiff Capp's email

-6-

address. Complaint ¶¶18-23.  Capp admits in his Complaint that Nordstrom requested and recorded his email address for the express purpose of sending him an e-receipt, which he wanted.  Complaint ¶¶ 18 and 23.  Thus, the collection of his email address did not violate Song-Beverly because it was recorded for a special purpose incidental but related to the credit card transaction.  Cal. Civ. Code § 1747.08(c)(4).  Capp, however, does not end his claim there.  He further alleges that Nordstrom later used his email address to send him unsolicited emails.  Complaint ¶23.  Thus, according to Capp's allegations, Nordstrom violated Song-Beverly by collecting his email for a legitimate and legal purpose and subsequently using that address for commercial purposes.  By basing his claim on the collection **and use** of his email address, Plaintiff has pleaded his Song-Beverly claim squarely within the confines of the CAN-SPAM preemption clause.  Moreover, because Song-Beverly is not a type of "tort action" based on misrepresentation,[4] it does not fall within the savings provision of the CAN-SPAM preemption clause.  15 U.S.C. § 7707(b)(1).  Plaintiff's claim is expressly preempted.

Plaintiff is expected to argue that CAN-SPAM does not preempt his Song-Beverly claim because Song-Beverly does not expressly or specifically regulate email.  Subsection (2) of the preemption clause states:  "[t]his chapter shall not be construed to preempt the applicability of – (A) State laws that are not specific to electronic mail, including State trespass, contract or tort law…" 15 U.S.C. §7707(b)(2)(A).   One decision from the California Court of Appeal has found this provision excludes certain Song-Beverly claims from preemption.[5]  *See Powers v. Pottery Barn, Inc.*, 177 Cal. App. 4th 1039 (2009).

---

[4]   A "tort" is a wrong for which the law provides a remedy in the form of an action **for damages**.  *Stephen K. v. Roni L.*, 105 Cal. App. 3d 640, 642 (emphasis added).  Song-Beverly does not permit an action for damages.  *See* Cal. Civ. Code § 1747.08(e) (violation subjects defendant to mandatory civil penalty only); §1747.08(f) (the People may seek injunctive relief).

[5]   Federal courts are not bound by state court decisions interpreting federal law.  *Congoleum Corp. v. DLW Aktiengesellschaft*, 729 F.2d 1240, 1242 (9th Cir. 1984) ("Of course, the state court's interpretation of federal law does not bind our decision, though it may persuade us to reach a similar result."); *see also Grantham v. Avondale Indus.*, 964 F.2d 471, 473 (5th Cir. 1992) ("It is beyond cavil that we are not bound by a state court's interpretation of federal law regardless of whether our jurisdiction is based on diversity of citizenship or a federal question.").

In *Powers,* plaintiff brought claims for violation of Song-Beverly, unfair competition and invasion of privacy based on Pottery Barn's request and recording of his email address during a credit card transaction. *Powers*, 177 Cal. App. 4th at 1041-1042.  Plaintiff Powers did not allege that Pottery Barn used his email address to send him marketing materials or collected the email for a valid reason incidental but related to the transaction. *Id.*  The *Powers* court ultimately concluded that CAN-SPAM did not preempt this Song-Beverly claim because CAN-SPAM "does not preempt state statutes that are not specific to email and have only incidental impact on e-mail use." *Id.* at 1045-46.

The *Powers* case, however, did not involve an e-receipt or the proper collection of an email address for a special purpose incidental but related to the transaction and is therefore readily distinguishable from the present action and allegations.  In this action, Nordstrom's collection of Plaintiff's email address does not itself violate Song-Beverly.  Cal. Civ. Code § 1747.08(c)(4).  Plaintiff provided his email address for the special purpose of receiving an e-receipt, which is incidental and unquestionably related to his credit card transaction.  The Complaint admits:  1) Plaintiff wanted an e-receipt; 2) he got his e-receipt and 3) he provided his email addresses for that purpose.  Complaint ¶¶18, 23.  Plaintiff, therefore, admits Nordstrom collected his email address for a special purpose incidental but related to the credit card transaction, i.e., getting his receipt, which does not violate Song-Beverly.  Cal. Civ. Code § 1747.08(c)(4).

Plaintiff, however, does not stop there.  He further alleges that Nordstrom used the email address to send him "regular and frequent" commercial messages.  Complaint ¶23.  Thus, the question in this case, which was not at issue and never addressed in *Powers*, is whether the collection **and subsequent use** of the email address to send Plaintiff commercial email messages violates Song-Beverly.  Complaint ¶23.  That issue falls directly within the confines of the preemption clause of CAN-SPAM.  *See Facebook,* 489 F. Supp. 2d at 1093-94.

Moreover, the *Powers* decision does not address a logical conundrum resulting from its outcome.  The *Powers* decision, as previously discussed, finds no preemption because Song-Beverly is not "specific to email." *Powers*, 177 Cal. App. 4th at 1047-1048 (citing 15 U.S.C. § 7707(b)(2)(A)).  The decision, however, expressly leaves open the question of whether or not an

-8-

email address constitutes "personal identification information" for purposes of liability under Section 1747.08. *Id.* at 1048-1049. Without resolving that issue, there is no way of determining whether or not Song-Beverly "specifically regulates email."

If, as Plaintiff Capp has alleged in the present matter (Complaint ¶¶13-23), email addresses constitute "personal identification information," then Song-Beverly does "specifically" and expressly regulate email and is preempted by CAN-SPAM.[6] In other words, one could remove the phrase "personal identification information" from Section 1747.08 and replace it with the phrase "email addresses." If, however, an email address is not "personal identification information," then there is no Song-Beverly violation. Regardless, under either interpretation, Plaintiff's claim against Nordstrom cannot stand and should be dismissed.

### C. Plaintiff's Non-Statutory Requests For Relief And Jury Demand Should Be Dismissed Or Stricken From The Complaint.

It is fundamental that Plaintiff may not seek any relief other than statutory penalties pursuant to Cal. Civ. Code § 1747.08(e) under his Song-Beverly claim. More specifically, prior to the enactment of Song-Beverly, existing law neither authorized nor prohibited merchants from requesting and recording personal information as part of a credit card transaction. *Haug v. PetSmart, Inc.*, 2010 U.S. Dist. LEXIS 84739 *3-4 (E.D. Cal. July 23, 2010). Thus, Song-Beverly created new rights. "Where a new right is created by statute, the party aggrieved by its violation is confined to the statutory remedy if one is provided." *Korn v. Polo Ralph Lauren Corp.*, 644 F. Supp. 2d 1212, 1219 (E.D. Cal. 2008).

Courts routinely hold that plaintiffs may not seek damages, injunctive relief, or any other form of non-statutory relief under Song-Beverly. *See, e.g., Haug*, 2010 U.S. Dist. LEXIS 84739 at *4 (granting motion to strike plaintiff's claims for injunctive relief, general damages, special damages, punitive damages and cy pres relief under Song-Beverly and holding that Song-Beverly "unambiguously authorizes only statutory penalties, and consequently no other damages are

---

[6] "The word 'specific' (adjective) means "Precisely formulated or restricted; . . . definite, . . . explicit; of an exact or particular nature." *People v. Thomas*, 25 Cal.2d 880, 889 (1945) (citing *Webster's New Int. Dict.* (2d ed.)). It does not mean "exclusive."

available"); *Saulic v. Symantec Corp.*, 596 F. Supp. 2d 1323, 1328 (N.D. Cal. 2009) ("Section 1747.08 does not permit a private plaintiff to sue for injunctive relief."); *Korn*, 644 F. Supp. 2d at 1219 (granting motion to strike claim for injunctive relief under Song-Beverly).

> A plain reading of the statute as a whole reveals, unambiguously, that plaintiffs may sue for civil penalties while the Attorney General or other government actor may sue for both civil penalties and injunctive relief. Plaintiff, as a private citizen, is confined to the statutory remedy of civil penalties as expressly provided in § 1747.08(e).

*Korn*, 644 F. Supp. 2d at 1219. Nevertheless, in his Prayer for Relief, Capp seeks various non-statutory forms of relief, including injunctive relief, as a result of his alleged claim for violation of Song-Beverly. Such relief is not authorized by Song-Beverly and should be dismissed as a matter of law.

Similarly, Plaintiff's jury demand must be dismissed or stricken because there is no right to a jury under Song-Beverly. Song-Beverly only authorizes a "pure civil penalty." *Shabaz v. Polo Ralph Lauren*, 586 F. Supp. 2d 1205, 1211-12 (C.D. Cal. 2008). Thus, a Song-Beverly claim is equitable in nature and "claims under § 1747.08 are not guaranteed jury trials by the Seventh Amendment." *Shabaz*, 586 F. Supp. 2d at 1211-12 (C.D. Cal. 2008) (striking jury demand); *accord In re Payless Shoesource, Inc.*, 2007 U.S. Dist. LEXIS 93677, *10 & n.3 (E.D. Cal. Sept. 11, 2009) (holding that Song-Beverly claims "are equitable in nature" and do not raise any jury questions).

## V.   CONCLUSION

For the foregoing reasons, Nordstrom respectfully asks this Court to dismiss Plaintiff's claim because it alleges a legal theory preempted by CAN-SPAM. Should the Court disagree and allow the case to continue, then Nordstrom requests the Court dismiss or, alternatively, strike Plaintiff's claims for non-statutory relief and a jury trial.

1  Dated: April 11, 2013

2                        SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

3

4                        By       */s/ Brian R. Blackman*
5                                    DANA DUNWOODY
                                     BRIAN R. BLACKMAN
6                                       Attorneys for
                                    Defendant NORDSTROM, INC.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-11-