1  James M. Lindsay, State Bar No. 164758
   LINDSAY LAW CORPORATION
2  21 Natoma Street, Suite 160
   Folsom, California 95630
3  Telephone: (916) 294-7573
   Facsimile: (916) 294-7583

5  Attorney for Plaintiff and the Class

8  UNITED STATES DISTRICT COURT

9  EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT CAPP, on behalf of himself and all others similarly situated, | CASE NO.: 2:13-CV-00660-MCE-AC |
| Plaintiff, | **CLASS ACTION** |
| vs. | **PLAINTIFF ROBERT CAPP'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT NORDSTROM, INC.'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT** |
| NORDSTROM, INC., a Washington corporation; and DOES 1 through 50, inclusive, | |
| Defendants. | Date: May 16, 2013<br>Time: 2:00 p.m.<br>Dept: Courtroom 7<br>Judge: Honorable Morrison C. England |
| | *Complaint Filed: March 4, 2013* |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................... 1

II.    THE SONG-BEVERLY CREDIT CARD ACT IS NOT PREEMPTED
BY CAN-SPAM .................................................................................................... 3

    A.    Plaintiff's Complaint Does Not Frame The Preemption Issue. ............... 3

    B.    Defendant's Alleged Defenses Do Not Frame The Preemption Issue.... 4

    C.    The Legal Standards Regarding Preemption Are Clear.......................... 6

    D.    CAN-SPAM's Congressional Findings and Express Preemption
Section Are Limited To The Transmission Of Electronic Messages ..... 7

    E.    CAN-SPAM's Express Preemption Section Unequivocally Evidences
Congress' Intent Not To Preempt State Laws Regulating the Collection
Of Personal Identification Information Including Email Addresses..... 10

    F.    <u>Facebook Inc. v. ConnectU, LLC</u> Does Not Support Preemption
In This Matter. ...................................................................................... 11

    G.    Congress' Express Findings Leave No Room For Any Inference That
CAN-SPAM Was Intended To Preempt California Laws Expressly
Aimed At Safeguarding Consumers' Privacy And Financial Security.... 12

    H.    Conflict Preemption Is Inapplicable Because Compliance With California
Civil Code § 1747.08 Would Not Render Concurrent Compliance With
CAN-SPAM Impossible or Frustrate Its Purpose. ................................ 13

III.    PLAINTIFF DOES NOT OPPOSE THE COURT STRIKING THE PRAYER
FOR INJUNCTIVE RELIEF OR DEMAND FOR JURY TRIAL ................... 15

IV.    CONCLUSION..................................................................................................... 15

LINDSAY LAW CORPORATION
21 Natoma Street, Suite 160
Folsom, California 95630

# TABLE OF AUTHORITIES

**FEDERAL CASES**

Cal. v. Fed. Energy Regulatory Comm'n,
 (1990) 495 U.S. 490 ............................................................................................................ 7

Cipollone v. Liggett Group, Inc.,
 (1992) 505 U.S. 504 ............................................................................................................ 7

CSX Transp., Inc. v. Easterwood,
 (1993) 507 U.S. 658 .......................................................................................................... 11

Facebook Inc. v. ConnectU, LLC,
 (N.D.Cal. 2007) 489 F.Supp.2d 1087 ........................................................................... 11, 12

Florida Lime & Avocado Growers, Inc. v. Paul,
 (1963) 373 U.S. 132 ............................................................................................................ 6

Gade v. National Solid Wastes Mgmt. Ass'n.,
 (1992) 505 U.S. 88 ........................................................................................................ 7, 14

Geier v. American Honda Motor Co.,
 (2000) 529 U.S. 861 .......................................................................................................... 14

Gregory v. Ashcroft,
 (1991) 501 U.S. 452 ............................................................................................................ 6

Hines v. Davidowitz,
 (1941) 312 U.S. 52 ............................................................................................................ 14

International Paper Co. v. Ouellette,
 (1987) 479 U.S. 481 ........................................................................................................ 6, 7

Jones v. Rath Packing Co.,
 (1977) 430 U.S. 519 ........................................................................................................ 6, 7

Lorillard Tobacco Co. v. Reilly,
 (2001) 533 U.S. 525 .......................................................................................................... 11

Massachusetts Ass'n of Health Maintenance Organizations v. Ruthardt,
 (1st Cir. 1999) 194 F.3d 176 ............................................................................................... 7

McCulloch v. Maryland,
 (1819) 17 U.S. 316 .............................................................................................................. 7

Medtronic, Inc. v. Lohr,
 (1996) 518 U.S. 470 ............................................................................................................ 6

Michigan Canners & Freezers Ass'n v. Agricultural Marketing & Bargaining Bd.,
 (1984) 467 U.S. 461 .......................................................................................................... 14

New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,
 (1995) 514 U.S. 645 ............................................................................................................ 7

Pac. Gas & Elec. Co. v. Energy Res. Conservation & Dev. Comm'n,
 (1983) 461 U.S. 190 ............................................................................................................ 6

Rice v. Santa Fe Elevator Corp.,
 (1947) 331 U.S. 218 ................................................................................................. 6, 7, 13

Smily v. Citibank (South Dakota), N.A.,
  (1995) 11 Cal.4th 138, *aff'd* 517 U.S. 735 (1996) ................................................................... 7

Sprietsma v. Mercury Marine,
  (2002) 537 U.S. 51 ................................................................................................................. 10

United States v. Bass,
  (1971) 404 U.S. 336 ................................................................................................................. 6

**STATE CASES**

Bronco Wine Co. v. Jolly,
  (2004) 33 Cal.4th 943 .............................................................................................................. 6

Jevne v. Superior Court,
  (2005) 35 Cal.4th 935 .............................................................................................................. 6

Nordstrom, Inc. Song-Beverly Act Cases,
  (Case No. JCCP 4651) ............................................................................................................. 1

Olszewski v. Scripps Health,
  (2003) 30 Cal.4th 798 .............................................................................................................. 6

Pineda v. Williams-Sonoma Stores, Inc.,
  (2011) 51 Cal.4th 524 ...................................................................................................... 1, 2, 3

Powers v. Pottery Barn, 177 Cal.App.4th 1039
  (2009) ............................................................................................................................ 1, 4, 5

Spielholtz v. Superior Court,
  (2001) 86 Cal.App.4th 1366 .................................................................................................... 7

Viva! Int'l Voice for Animals v. Adidas Prom. Retail Ops., Inc.,
  (2007) 41 Cal.4th 929 ......................................................................................................... 6, 11

**FEDERAL CODES**

15 U.S.C. § 7701 "CAN-SPAM"
  Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 ........ passim

15 U.S.C. § 7701(a)(2) ................................................................................................................ 14

15 U.S.C. § 7701(b)(3) ................................................................................................................ 14

15 U.S.C. § 7707 ............................................................................................................. 10, 11, 13

15 U.S.C. § 7707(b)(2)(A) ........................................................................................................... 13

**STATE CODES**

California Business and Professions Code § 17529.4 ................................................................ 12

California Civil Code § 1747.08 ........................................................................................... passim

Plaintiff Robert Capp (hereinafter referred to as the "Plaintiff"), on behalf of himself and all others similarly situated, hereby submits his opposition to Defendant Nordstrom, Inc.'s (hereinafter referred to as the "Defendant" or "Nordstrom") Motion to Dismiss Plaintiff's Class Action Complaint (hereinafter referred to as the "Motion") as follows:

## I.

## INTRODUCTION

This is at least the second action brought against Defendant Nordstrom for violations of California Civil Code § 1747.08 (hereinafter sometimes also referred to as "Song-Beverly" or "Section 1747.08"). Defendant was sued for requesting and recording customer zip codes in 2010 and settled that action in 2012 for the amount of $2,500,000 only to begin engaging in its present practice of requesting and recording customer email addresses in conjunction with credit card purchase transactions. While Defendant states this action "is one in an ever expanding avalanche," the reality is that Defendant knew this practice was illegal and made a conscious decision to engage in it anyway.

As referenced above, California Civil Code § 1747.08 is not new to Defendant. In fact, Defendant had just finalized a settlement in the coordinated action styled <u>Nordstrom, Inc. Song-Beverly Act Cases</u> (Case No. JCCP 4651) when it then began its practice of requesting and recording customer email addresses in conjunction with credit card purchase transactions. It is important to note that defense counsel in this matter also represented Defendant in that recent previous matter. Defense counsel also has a long history of defending actions predicated upon California Civil Code § 1747.08 and is, in fact, on the wrong side of multiple reported decisions in this area of law including <u>Pineda v. Williams-Sonoma Stores, Inc.</u>, (2011) 51 Cal.4th 524. Perhaps even more importantly for the purposes of the present motion, defense counsel presented, argued and lost the contention that the Controlling the Assault of Non-Solicited Pornography and Marketing ("CAN-SPAM") Act of 2003, 15 U.S.C. § 7701, *et seq.*, preempts California Civil Code § 1747.08 in the action <u>Powers v. Pottery Barn</u>, (2009) 177 Cal.App.4th 1039.

Due to the weakness of the preemption argument, Defendant expends a significant amount of time addressing substantive matters that it acknowledges must "be determined another

1  day." In any event, those further assertions are equally without support and incorrect. Although
2  Defendant states that this action is unique, the reality is that it is just another instance of a retailer
3  wanting customer information and tricking its customers into providing it. Several years ago,
4  retailers would request and record their customers' telephone numbers at the point of sale for the
5  purpose of utilizing "reverse append" technology to obtain those customers' addresses for the
6  purpose of direct marketing efforts. After a large number of retailers were successfully sued for
7  this practice, the technology was advanced and retailers began requesting and recording
8  customer zip codes in order to perform the "reverse append" and obtain the addresses. The
9  impropriety of obtaining a zip code was more difficult for the courts to assess than a telephone
10 number because zip codes were not specifically mentioned as being within the definition of
11 "personal identification information" under the statute and a zip code, by itself, cannot be
12 utilized to make direct contact with the customer. Nevertheless, as correctly stated by Defendant
13 in its moving papers, the California Supreme Court ruled unanimously that a zip code is
14 "personal identification information" and, therefore, requesting and recording one in conjunction
15 with a credit card transaction is in violation of California law.

16       The present scenario is just the retail industry's next step in an attempt to stay ahead of
17 consumers, class action attorneys and the courts. A high percentage of customers are not
18 interested in providing an email address or other contact information at the point of sale even
19 though it is very valuable for the retailer to obtain it. The answer of some retailers including
20 Defendant Nordstrom is to fabricate the need to have an email address in order to provide a
21 receipt for the purchase. It is a very effective collection method; customers want and need
22 receipts.

23       The assertion that an email address is not "personal identification information" makes no
24 sense at all. After all, Plaintiff has received direct contact from Defendant on a regular basis
25 since the transaction in question. Even if it is believed that the retailers' arguments relating to
26 zip codes had some logical appeal, there is no similar appeal when it comes to an email address.
27 In fact, in light of the unanimous opinion and language utilized by the California Supreme Court
28 in Pineda v. Williams-Sonoma Stores, Inc., (2011) 51 Cal. 4th 524, it is exceedingly difficult to

- 2 -

PLAINTIFF ROBERT CAPP'S MEMO OF P&A      CASE NO.: 2:13-cv-00660-MCE-AC
IN OPPOSITION TO MOTION TO DISMISS

1  believe that a single court in California would hold that an email address is not "personal
2  identification information" under the statute.
3     Defendant's derivative and premature argument that the request and recordation of
4  Plaintiff's email address was "for a special purpose incidental to the credit card transaction" is
5  likewise without merit.  Any retailer can create a scenario that causes a customer to provide
6  information.  The clear point of the special purpose exception is to provide latitude for the
7  retailer to obtain personal information when it is actually needed in order to complete the
8  transaction.  Defendant apparently wants the Court to forget at the inception that millions of
9  customers walk out of stores every day with their receipt in hand.
10    The end result is that Defendant's preemption argument has failed before because the
11 express language of CAN-SPAM specifically and only preempts state statutes that attempt to
12 regulate the sending of email messages, not those that regulate the collection of email addresses
13 and other personal identification information in conjunction with credit card transactions.
14 Defendant's derivative arguments having no specific tie to the preemption issue and are likewise
15 without any support regardless of when those arguments might be addressed.

16                                           **II.**
17      **THE SONG-BEVERLY CREDIT CARD ACT IS NOT PREEMPTED BY CAN-SPAM**
18 **A.     Plaintiff's Complaint Does Not Frame The Preemption Issue.**
19    Defendant's motion argues that, in essence, Plaintiff's complaint frames the preemption
20 analysis.  Specifically, Defendant argues that, since Plaintiff alleged that Defendant utilized
21 Plaintiff's email address to send unrequested and unwanted email messages, Defendant's
22 preemption claim is somehow perfected.  There are at least two major problems with
23 Defendant's argument.  First, Plaintiff has never claimed in the complaint or otherwise that
24 Defendant's usage of Plaintiff's email address to send unrequested and unwanted commercial
25 messages was a violation of California Civil Code § 1747.08.  The cause of action was perfected
26 when Defendant requested and recorded the email address in conjunction with a credit card
27 transaction.  Pineda, *supra*, 51 Cal.4th at 527.  The allegations relating to Defendant's actual
28 usage of the email address it illegally collected were simply designed to establish Defendant's

- 3 -

1  subterfuge in its collection process.  Second, federal preemption is determined by the words and
2  actions of Congress, not by the allegations of litigants.  Defendant has produced no authority for
3  the proposition that a litigant's or attorney's words frame the preemption analysis because there
4  is no such authority.  Specifically, Defendant argues that the result on preemption here should be
5  different than in Powers because here there is an allegation that Defendant actually used the
6  email address and in Powers there was not.  Therefore, Defendant's argument is that CAN-
7  SPAM does not preempt Song-Beverly if Defendant unilaterally decides not to utilize the email
8  address but does preempt Song-Beverly if Defendant unilaterally decides to utilize the email
9  address.  It seems abundantly clear that is not the law.

10  **B.**     **Defendant's Alleged Defenses Do Not Frame The Preemption Issue.**

11  Defendant further argues that Plaintiff wanted his receipt delivered by email and that the
12  action was, therefore, taken for a special purpose incidental to the credit card transaction.  Thus,
13  Defendant alleges that its actions did not violate Song-Beverly.  This argument is both incorrect
14  and irrelevant to the preemption analysis.  Once again, Defendant is short on legal authority for
15  the proposition that its alleged defense to the Song-Beverly cause of action impacts the Court's
16  analysis as to whether Song-Beverly is preempted by CAN-SPAM. The reason for this void, of
17  course, is that there is no such authority.  Either Congress intended to preempt Song-Beverly
18  through the passage of CAN-SPAM or it did not so intend.  Defendant's alleged affirmative
19  defenses to Song-Beverly are not a part of the preemption analysis.

20  In any event, Defendant's Song-Beverly analysis is simply wrong.  First, the premise that
21  Plaintiff "wanted" to receive his receipt by email is wrong.  The complaint alleges that Plaintiff
22  wanted his receipt; it does not allege that he wanted his receipt by email.  Plaintiff was not given
23  a choice of method of delivery.  If he wanted his receipt, he was to provide his email address, so
24  he did.  Second, the e-receipt scenario does not fit within the special purpose exception under
25  California Civil Code § 1747.08(c)(4).  That exception is very specific and limited to necessary
26  functions related to the **purchased merchandise**.  In other words, a retailer, of course, has the
27  authority to obtain personal contact information if it is required to provide the customer with the
28  merchandise and services for which he or she paid.  The legislature clearly did not intend for this

- 4 -

1  exception to be extended to cover a scenario created by the retailer to provide something other
2  than the merchandise to the customer.  This is especially true when the item in question, such as
3  a receipt, can be and typically is provided at the store without the need to request and record that
4  customer's personal identification information.

5  Lastly, Defendant argues that there has been no Song-Beverly violation because
6  Plaintiff's email address is not personal identification information.  It is actually fairly difficult to
7  even take this argument seriously since Defendant has now personally contacted Plaintiff on
8  more than fifty occasions since obtaining his email address.  If there is any question, the matter is
9  easy to resolve by reviewing the definition of personal identification information in California
10 Civil Code § 1747.08(b).  An email address is information concerning the cardholder that is not
11 set forth on the credit card.  It should also be noted that, contrary to Defendant's insinuation, the
12 issue of whether email addresses constitute personal identification information has been
13 previously addressed.  The Powers court referenced the fact that the trial court found that an
14 email address is personal identification information.  *Id.* at 1042.  After holding that the trial
15 court was wrong in its CAN-SPAM preemption analysis, the Powers court declined to disturb the
16 trial court's finding that an email address is, in fact, personal identification information.

17 Defendant makes a final alternative plea to the Court that, if the Court finds that an email
18 address is personal identification information, it must then find that there is preemption, or, if the
19 Court finds that there is no preemption, it must then find that the email address is not personal
20 identification information.  Defendant attempts to present this position as a matter of deductive
21 reasoning when it clearly is not. As will be examined in great detail in the following sections,
22 CAN-SPAM does not preempt Song-Beverly because CAN-SPAM only preempts state statutes
23 that attempt to regulate the transmission of email messages while Song-Beverly only regulates
24 the collection of personal identification information during credit card transactions. Song-
25 Beverly does not even mention email or the transmission of messages.  On the other hand, an
26 email address is personal identification information because it is information that can be utilized
27 to identify and/or directly contact an individual that is not set forth on the credit card.  These
28 / / /

- 5 -

PLAINTIFF ROBERT CAPP'S MEMO OF P&A                              CASE NO.: 2:13-cv-00660-MCE-AC
IN OPPOSITION TO MOTION TO DISMISS

ideas are not mutually exclusive, and, as a result, the Powers court did not see the "logical conundrum" argued by Defendant.

C. **The Legal Standards Regarding Preemption Are Clear.**

"[C]ourts are reluctant to infer preemption, and it is the burden of the party claiming that Congress intended to preempt state law to prove it." Viva! Int'l Voice for Animals v. Adidas Prom. Retail Ops., Inc., (2007) 41 Cal.4th 929, 936 (*quoting* Olszewski v. Scripps Health, (2003) 30 Cal.4th 798, 815); *accord* Bronco Wine Co. v. Jolly, (2004) 33 Cal.4th 943, 956-57.  Courts "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." Viva! Int'l Voice for Animals, 41 Cal.4th at 938 (*quoting* Rice v. Santa Fe Elevator Corp., (1947) 331 U.S. 218, 230); *accord* United States v. Bass, (1971) 404 U.S. 336, 349; *see also* Bronco Wine Co., 33 Cal.4th at p. 974 (in areas of traditional state regulation, a "strong presumption" against preemption applies and state law will not be displaced "unless it is clear and manifest that Congress intended to preempt state law").  The strong presumption against preemption "provides assurance that the 'federal state balance' will not be disturbed unintentionally by Congress or unnecessarily by the Courts." Olszewski, 30 Cal.4th at 815 (quotation omitted).  At its core, the preemption question is one of Congressional intent, which is the "ultimate touchstone." Viva! Int'l Voice for Animals, 41 Cal.4th at 939 (*quoting* Medtronic, Inc. v. Lohr, (1996) 518 U.S. 470, 485; Jevne v. Superior Court, (2005) 35 Cal.4th 935, 949).  Thus, to find preemption, the Court must be "absolutely certain that Congress intended" that result. *See* Gregory v. Ashcroft, (1991) 501 U.S. 452, 464.)

Ordinarily, there are three ways in which a State statute may be preempted: (1) express; (2) field; and (3) conflict. *See* Pac. Gas & Elec. Co. v. Energy Res. Conservation & Dev. Comm'n, (1983) 461 U.S. 190, 204; International Paper Co. v. Ouellette, (1987) 479 U.S. 481, 491.  In its moving papers, Defendant relies exclusively on express preemption; however, the other two methods will be discussed for completeness.  Express preemption occurs "when Congress has 'unmistakably ... ordained' that its enactments alone are to regulate a [subject, and] state laws regulating that [subject] must fall." Jones v. Rath Packing Co., (1977) 430 U.S. 519,

- 6 -

525 (*quoting* Florida Lime & Avocado Growers, Inc. v. Paul, (1963) 373 U.S. 132, 142). Field preemption "reflects the view that Congress' intent to occupy a given field can be inferred from the pervasiveness of federal regulation and/or the dominance of the federal interest in a particular area of legislative activity." Massachusetts Ass'n of Health Maintenance Organizations v. Ruthardt, (1st Cir. 1999) 194 F.3d 176, 179 (*citing* Rice, 331 U.S. at 230). Conflict preemption reflects the idea that congressional intent also can be deduced from circumstances such as inconsistency or impossibility. *See* Gade v. National Solid Wastes Mgmt. Ass'n., (1992) 505 U.S. 88, 98. Although Defendant relies solely on express preemption in this matter, none of these preemption situations are applicable here.

It is well-established that consumer protection is a field traditionally occupied by the States. Smily v. Citibank (South Dakota), N.A., (1995) 11 Cal.4th 138, 147, *aff'd* 517 U.S. 735 (1996)("The 'historic police powers of the States' extend to consumer protection.") (citations omitted); Spielholtz v. Superior Court, (2001) 86 Cal.App.4th 1366, 1372 ("The states' police powers extend to consumer protection…so the presumption against preemption applies in the present action.") (citations omitted). Thus, in this case, in which Plaintiff's cause of action arose under what is obviously a State consumer protection statute, the analysis must start with a presumption against preemption.

**D. CAN-SPAM's Congressional Findings and Express Preemption Section Are Limited To The Transmission Of Electronic Messages**

The law is clear that when considering preemption, no matter which type, "[t]he purpose of Congress is the ultimate touchstone." Cipollone v. Liggett Group, Inc., (1992) 505 U.S. 504, 516; New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., (1995) 514 U.S. 645, 655. Where the statute does not speak directly to the issue, Courts look to "the goals and policies of the Act in determining whether it in fact preempts action." International Paper Co., 479 U. S. at 493. As explained in Gade, "[o]ur ultimate task in any preemption case is to determine whether state regulation is consistent with the structure and purpose of the statute as a whole." Gade, 505 U.S. at 98; Cal. v. Fed. Energy Regulatory Comm'n, (1990) 495 U.S. 490, 504. Since McCulloch v. Maryland, (1819) 17 U.S. 316, the

- 7 -

United States Supreme Court has consistently held that federal preemption of State laws requires a clear congressional intent. Thus, preemption exists only where there is a "clear and manifested purpose of Congress to foreclose a particular field to state legislation." Jones, 430 U.S. at 525.

In this case, Congress' findings and policy considerations for the adoption of CAN-SPAM, as further evidenced by the clear preemption language set forth in CAN-SPAM itself, makes absolutely certain that CAN-SPAM was never intended to preempt State consumer protection laws proscribing the *collection* of personal identification information including email addresses.

In adopting CAN-SPAM, Congress made clear those findings, determinations, and policies that were material in adopting the legislation and stated as follows:

(a) Findings

The Congress finds the following:

(1) Electronic mail has become an extremely important and popular means of communication, relied on by millions of Americans on a daily basis for personal and commercial purposes. Its low cost and global reach make it extremely convenient and efficient, and offer unique opportunities for the development and growth of frictionless commerce.

(2) ***The convenience and efficiency of electronic mail are threatened by the extremely rapid growth in the volume of unsolicited commercial electronic mail. Unsolicited commercial electronic mail*** is currently estimated to account for over half of all electronic mail traffic, up from an estimated 7 percent in 2001, and the volume continues to rise. Most of these messages are fraudulent or deceptive in one or more respects.

(3) ***The receipt of unsolicited commercial electronic*** mail may result in costs to recipients who cannot refuse to accept such mail and who incur costs for the storage of such mail, or for the time spent accessing, reviewing, and discarding such mail, or for both.

(4) ***The receipt of a large number of unwanted messages*** also decreases the convenience of electronic mail and creates a risk that wanted electronic mail messages, both commercial and noncommercial, will be lost, overlooked, or discarded amidst the larger volume of unwanted messages, thus reducing the reliability and usefulness of electronic mail to the recipient.

(5) Some commercial electronic mail contains material that many recipients may consider vulgar or pornographic in nature.

(6) The growth in ***unsolicited commercial electronic*** mail imposes significant monetary costs on providers of Internet access services, businesses, and educational and nonprofit institutions that carry and receive such mail, as there is a finite volume of mail that such providers, businesses, and institutions can handle without further investment in infrastructure.

(7) Many *senders of unsolicited commercial electronic mail* purposefully disguise the source of such mail.

(8) Many *senders of unsolicited commercial electronic mail* purposefully include misleading information in the messages' subject lines in order to induce the recipients to view the messages.

(9) While some *senders of commercial electronic mail* messages provide simple and reliable ways for recipients to reject (or "opt-out" of) receipt of commercial electronic mail from such senders in the future, other senders provide no such "opt-out" mechanism, or refuse to honor the requests of recipients not to receive electronic mail from such senders in the future, or both.

(10) *Many senders of bulk unsolicited commercial electronic mail* use computer programs to gather large numbers of electronic mail addresses on an automated basis from Internet websites or online services where users must post their addresses in order to make full use of the website or service.

(11) *Many States have enacted legislation intended to regulate or reduce unsolicited commercial electronic mail, but these statutes impose different standards and requirements. As a result, they do not appear to have been successful in addressing the problems associated with unsolicited commercial electronic mail, in part because, since an electronic mail address does not specify a geographic location, it can be extremely difficult for law-abiding businesses to know with which of these disparate statutes they are required to comply.*

(12) *The problems associated with the rapid growth and abuse of unsolicited commercial electronic mail cannot be solved by Federal legislation alone.* The development and adoption of technological approaches and the pursuit of cooperative efforts with other countries will be necessary as well.

(b) Congressional determination of public policy

On the basis of the findings in subsection (a) of this section, the Congress determines that--

(1) there is a substantial government interest in *regulation of commercial electronic mail* on a nationwide basis;

(2) *senders of commercial electronic mail* should not mislead recipients as to the source or content of such mail; and

(3) *recipients of commercial electronic mail have a right to decline to receive additional commercial electronic mail* from the same source.

15 U.S.C. § 7701 (emphasis added).

Importantly, at no point does Congress indicate *collection* of email addresses as being an issue that it seeks to regulate by the passage and implementation of CAN-SPAM.  Rather, as is clear from Congress' express finding, CAN-SPAM was adopted to regulate the sending of commercial electronic email.  This fact is further evidenced by CAN-SPAM's express preemption language:

- 9 -

(a) Federal law

(1) Nothing in this chapter shall be construed to impair the enforcement of section 223 or 231 of Title 47, chapter 71 (relating to obscenity) or 110 (relating to sexual exploitation of children) of Title 18, or any other Federal criminal statute.

(2) Nothing in this chapter shall be construed to affect in any way the Commission's authority to bring enforcement actions under FTC Act for materially false or deceptive representations or unfair practices in commercial electronic mail messages.

(b) State law

(1) In general

This chapter supersedes any statute, regulation, or rule of a State or political subdivision of a State *that expressly regulates the use of electronic mail to send commercial messages*, except to the extent that any such statute, regulation, or rule prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto.

(2) State law not specific to electronic mail

*This chapter shall not be construed to preempt the applicability of*--

(A) *State laws that are not specific to electronic mail*, including State trespass, contract, or tort law; or

(B) other State laws to the extent that those laws relate to acts of fraud or computer crime.

(c) No effect on policies of providers of Internet access service

Nothing in this chapter shall be construed to have any effect on the lawfulness or unlawfulness, under any other provision of law, of the adoption, implementation, or enforcement by a provider of Internet access service of a policy of declining to transmit, route, relay, handle, or store certain types of electronic mail messages.

15 U.S.C. § 7707 (emphasis added).

As can be seen from CAN-SPAM's express preemption language, the statute was never intended to preempt those State consumer protection laws regulating the collection of personal identification information including email addresses.

E. **CAN-SPAM's Express Preemption Section Unequivocally Evidences Congress' Intent Not To Preempt State Laws Regulating the Collection Of Personal Identification Information Including Email Addresses.**

To determine whether Congress intended to preempt State law, courts look to the statutory text as the best indicator of Congress' intent. Sprietsma v. Mercury Marine, (2002) 537 U.S. 51, 62-63. Where, as here, "Congress has expressly identified the scope of the state law it

1  intends to preempt, [courts] infer [that] Congress intended to preempt no more than that absent

2  sound contrary evidence." Viva! Int'l Voice for Animals, 41 Cal.4th at p. 945; *see also*

3  Sprietsma, 537 U.S. at 62-63 (where a statute "contains an express preemption clause, our 'task

4  of statutory construction must in the first instance focus on the plain wording of the clause,

5  which necessarily contains the best evidence of Congress' preemptive intent'")(*quoting* CSX

6  Transp., Inc. v. Easterwood, (1993) 507 U.S. 658, 664); Lorillard Tobacco Co. v. Reilly, (2001)

7  533 U.S. 525, 541 ("In these cases our task is to identify the domain expressly preempted,

8  [citation], because 'an express definition of the preemptive reach of a statute...supports a

9  reasonable inference…that Congress did not intend to preempt other matters")(quotation

10 omitted)).

11     In this case, Defendant argues that CAN-SPAM's express preemption language extends

12 to State consumer protection statutes aimed to curtail the collection of consumers' personal

13 identification information including email addresses, such as California Civil Code § 1747.08.

14 Yet nothing in the express preemption language of CAN-SPAM leads to such a determination.

15 Indeed, nothing in CAN-SPAM's preemption language discusses the *collection* of email

16 addresses; rather, the language is narrowly tailored to preempt those – and only those – State

17 regulations *regulating the use of electronic mail to send commercial messages*.  15 U.S.C. §

18 7707(b)(1) (emphasis added).  It is equally clear that California Civil Code § 1747.08 does not

19 regulate the use of electronic mail to **send commercial messages** but only the **collection** of

20 personal identification information during credit card transactions.  Accordingly, it would be

21 improper for the Court to expand this express preemption language to an area not *expressly*

22 included by Congress.

23 **F.     Facebook Inc. v. ConnectU, LLC Does Not Support Preemption In This Matter.**

24     In its motion, Defendant relies heavily on Facebook Inc. v. ConnectU, LLC, (N.D.Cal.

25 2007) 489 F.Supp.2d 1087, to support its argument that CAN-SPAM preempts both the

26 *collection* of email addresses as well as the use of electronic mail to send commercial messages.

27 However, Facebook cannot be interpreted to expand the scope of CAN-SPAM's express

28 preemption language outside of that intended – or even contemplated – by Congress.

1   In <u>Facebook</u>, the court was faced with the issue of whether California Business and Professions Code § 17529.4 was preempted by CAN-SPAM. *Id*. at 1093. Section 17529.4 makes it unlawful "for any person or entity to collect electronic mail addresses posted on the Internet if the purpose of the collection is for the electronic mail addresses to be used to ... [i]nitiate or advertise in an unsolicited commercial e-mail advertisement..." <u>Id</u>. at 1093-94. Accordingly, the plaintiff argued that Section 17529.4 was outside the scope of CAN-SPAM "because it 'primarily' regulated the *collection* of email addresses, whereas the preemption clause refers only to state statutes regulating the *sending* of commercial email." *Id*. (emphasis in original). The Court, though, disagreed based upon the specific finding that Section 17529.4 plainly and expressly "regulate[d] the use of electronic mail to send commercial messages" and was thus preempted by CAN-SPAM. *Id*. at 1094. In other words, the <u>Facebook</u> court ruled in favor of preemption because the underlying State statute attempted to regulate both collection and transmission.

The <u>Facebook</u> Court's holding is clear – a State statute regulating the collection of email addresses is preempted *only* if the statute *also expressly regulates* the sending of commercial email messages. California Civil Code § 1747.08 does not expressly or implicitly seek to prohibit the sending of anything. Accordingly, because the clear language of Section 1747.08 contains no such language regarding the sending of commercial messages via email – as was before the Court in <u>Facebook</u> – it does not fall within the purview of the express preemption language set forth in CAN-SPAM.

**G.  Congress' Express Findings Leave No Room For Any Inference That CAN-SPAM Was Intended To Preempt California Laws Expressly Aimed At Safeguarding Consumers' Privacy And Financial Security.**

As stated above, in addition to express preemption – which clearly does not apply – there are two other ways federal law may preempt State laws. One such manner is known as field preemption. Field preemption exists "where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress 'left no room for supplementary state regulation." <u>Rice</u>, 331 U.S. at 230. In this case, no such reasonable inference can be made based upon Congress' intent, the specific preemption language in CAN-SPAM, and the underlying presumption against preemption.

- 12 -

1    Congress' stated intent in adopting CAN-SPAM was to create comprehensive legislation
2  aimed at the "regulation of commercial electronic mail on a nationwide basis."  15 U.S.C. §
3  7701(b)(1).  This fact in and of itself makes it clear that California Civil Code § 1747.08 and
4  CAN-SPAM do not even regulate the same field.  Indeed, Section 1747.08 and CAN-SPAM
5  seek to proscribe substantially different activity in that Section 1747.08 prohibits the collection
6  of consumer information during credit card transactions, whereas CAN-SPAM prohibits the
7  sending of unwanted emails to consumers.  The differences are substantial, and there can be no
8  inference that Congress intended CAN-SPAM to preempt State consumer protection laws aimed
9  at preventing the collection of personal identification information in connection with certain
10 financial transactions.  Further, the express preemption language in CAN-SPAM unequivocally
11 states that CAN-SPAM is only intended to preempt those State laws "that expressly regulate[]
12 the use of electronic mail to send commercial messages."  15 U.S.C. § 7707(b)(1).  And that it is
13 not intended to preempt those "State laws that are not specific to electronic mail."  15 U.S.C. §
14 7707(b)(2)(A).  There is no dispute that Section 1747.08 does not, in any manner, seek to
15 regulate "the use of electronic email to send commercial messages" or in any way is specific to
16 "electronic mail."  The language utilized by Congress is of the ultimate import, as it clearly
17 evidences its intent *not* to wholly subsume all State laws relating to email addresses; but rather,
18 only those State laws that expressly regulate "the use of electronic email to send commercial
19 messages."  CAN-SPAM certainly does not attempt to inhibit the power of the State to safeguard
20 privacy and financial security of its residents.  Thus, field preemption is inapplicable.

21 **H.     Conflict Preemption Is Inapplicable Because Compliance With California Civil Code § 1747.08 Would Not Render Concurrent Compliance With CAN-SPAM**
22 **Impossible or Frustrate Its Purpose.**

23    The last manner in which federal law may preempt State law is when there is an "actual
24 conflict" between federal and State law.  Conflict preemption, exists when the challenged State
25 law "stands as an obstacle to the accomplishment and execution of the full purposes and
26 objectives of Congress."  Michigan Canners & Freezers Ass'n v. Agricultural Marketing &
27 Bargaining Bd., (1984) 467 U.S. 461, 469 (*quoting* Hines v. Davidowitz, (1941) 312 U.S. 52,
28 67); *see also* Geier v. American Honda Motor Co., (2000) 529 U.S. 861, 873 (identifying two

- 13 -

1  types of preemptive conflicts – those that make it impossible to concurrently comply with State
2  and federal law and those under which State law prevents or frustrates federal objectives.).
3       The issue, then, is whether California Civil Code § 1747.08's prohibition against
4  collecting personal identification information including email addresses during credit card
5  transactions renders it impossible to comply with CAN-SPAM or frustrates the statute's federal
6  objectives.  If not, then Section 1747.08 is not impliedly preempted by CAN-SPAM.  On this
7  point, because Congress' purpose is the "ultimate touchtone," Gade, 505 U.S. at 96, it is readily
8  apparent that Section 1747.08's prohibition against the collection of personal identification
9  information during credit card transactions is not preempted because Congress' design and
10 purpose, as evidenced by both CAN-SPAM's legislative intent and express preemption language,
11 could not be more obvious, clearly stated, or certain.
12      It is beyond dispute, as demonstrated by both Congress' findings in adopting CAN-
13 SPAM and the statute's express preemption language, that Congress' goal in approving CAN-
14 SPAM was for the "regulation of commercial electronic mail on a nationwide basis" because
15 "[t]he convenience and efficiency of electronic mail are threatened by the extremely rapid
16 growth in the volume of unsolicited commercial electronic mail."  15 U.S.C. § 7701(a)(2);
17 (b)(3).  Permitting California to prohibit the collection of email addresses during credit card
18 transaction hardly interferes with these stated objectives.  Moreover, it cannot be argued that
19 concurrent compliance with both CAN-SPAM and Section 1747.08 cannot be accomplished.
20 Indeed, as stated throughout, Section 1747.08 does not seek to regulate against the sending of
21 unwanted emails.  Certainly, as both statutes regulate substantially different conduct, there is no
22 reason why concurrent compliance cannot be accomplished.  As a result, conflict preemption
23 does not apply.
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

- 14 -

## III.

## PLAINTIFF DOES NOT OPPOSE THE COURT STRIKING THE PRAYER FOR INJUNCTIVE RELIEF OR DEMAND FOR JURY TRIAL

Defendant has moved the Court to strike Plaintiff's prayer for injunctive relief and demand for a jury trial. Plaintiff does not oppose this request and will seek only civil penalties as a result of Defendant's repetitive violations of the law.

## IV.

## CONCLUSION

In conclusion, there is no theory that supports the conclusion that Congress intended CAN-SPAM to preempt California's Song-Beverly Credit Card Act including California Civil Code § 1747.08. The Powers court correctly assessed this matter previously as CAN-SPAM expressly preempts only legislation that attempts to regulate the transmission of electronic messages and California Civil Code § 1747.08 only regulates the collection of personal identification information in conjunction with credit card transactions. Furthermore, it cannot reasonably be argued that an email address is not personal identification information or that emailing a receipt fits within the special purpose exception or even that those contentions affect the preemption analysis. In the end, Defendant continues to violate California Civil Code § 1747.08 because it is more interested in obtaining its customers' personal information than complying with California law. Defendant has provided no basis to dismiss this action. Accordingly, this motion to dismiss must be denied.

Dated:  May 2, 2013                             LINDSAY LAW CORPORATION


                                                By:     /s/James M. Lindsay
                                                        James M. Lindsay
                                                        jlindsay@lindsaylawcorporation.com
                                                        Attorneys for Plaintiff and the Class