1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ROBERT CAPP, on behalf of himself
and others similarly situated,

                    Plaintiff,

          v.

NORDSTROM, INC. a Washington
Corporation; and DOES 1 through 50,
inclusive,

                    Defendants.

No. 2:13-cv-00660-MCE-AC

**MEMORANDUM AND ORDER**

18
19
20
21
22
23
24
25
26
27
28

        Through this action, Plaintiff Robert Capp, on behalf of himself and others

similarly situated (collectively "Plaintiff"), seeks redress for violations of California's

Song–Beverly Credit Card Act of 1974 ("Credit Card Act"), Cal. Civ. Code §§ 1747

et seq.  Specifically, Plaintiff alleges that Defendant Nordstrom, Inc., and unnamed

codefendants (collectively "Defendant"), requested Plaintiff's email address purportedly

to send him an electronic receipt in connection with a credit card transaction at

Defendant's retail store.  Plaintiff goes on to allege that Defendant subsequently used

Plaintiff's email address to send him unsolicited marketing materials in violation of the

Credit Card Act.  Plaintiff's case, originally filed in the Superior Court of the State of

California in and for the County of Placer, was removed by Defendant to this Court under

the Class Action Fairness Act, 28 U.S.C. §§ 1332, 1441, 1453.  (ECF No. 1.)

1   Presently before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint

2   for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), (ECF No. 6,

3   as augmented by supplemental briefing, ECF No. 12, at the Court's request).  In its

4   Motion, Defendant takes the position that an email address is not "personal identification

5   information" as that term is defined in the Credit Card Act at Cal. Civ. Code § 1747.08(b).

6   Defendant further asserts that to the extent an email address is held "personal

7   identification information," California's Credit Card Act is preempted by federal law,

8   namely, the Controlling the Assault of Non-Solicited Pornography and Marketing Act of

9   2003 ("CAN-SPAM Act"), 15 U.S.C. §§ 7704 et seq.  The CAN-SPAM Act regulates the

10  transmission of unsolicited "commercial electronic mail messages."

11      For the reasons set forth below, Defendant's Motion to Dismiss is DENIED.

12

13                          **BACKGROUND**[1]

14

15      This case arises from Plaintiff's credit card purchase at Defendant's retail store

16  and the cashier's request that Plaintiff provide his email address to obtain an "e-receipt."

17  Plaintiff visited Defendant's retail store in Roseville, California.  He picked out several

18  items to purchase and proceeded to the register.  In a ritual familiar to most shoppers,

19  Plaintiff handed the merchandise to the employee at the register who then scanned the

20  items and informed Plaintiff of the total cost, including sales tax.  Plaintiff presented his

21  credit card, and the clerk swiped it into a portable device.

22      Plaintiff alleges that what happened next violated California law.  Defendant's

23  cashier then asked Plaintiff "to provide his email address for the stated purpose of

24  emailing his receipt."  (Not. of Removal, Ex. 2 ("Compl."), at 5:4–5, ECF No. 1-1.)

25  ///

26  ///

27  ────────────────

[1] The following recitation of facts is taken, sometimes verbatim, from Plaintiff's Complaint.  (Not. of
28  Removal, Ex. 2, ECF No. 1-1.)

2

1   Plaintiff wanted a receipt and "believing that he was required to provide his email

2   address information in order to complete the transaction and receive his receipt, he

3   provided an email address to Defendant's cashier.  Defendant's employee then typed

4   and recorded Plaintiff's email address into the portable device."  (Id. at 5:5–7.)  "At that

5   point in the transaction, Defendant had Plaintiff's credit card number and email address

6   recorded into the same portable device."  (Id. at 5:9–10.)  Plaintiff signed his name and

7   left the store with the purchased items.

8       Plaintiff later received an email with his receipt, as expected; however, "Plaintiff

9   also received . . . promotional communications and materials [from] Defendant."  (Id. at

10  5:16–18.)  "In fact," Plaintiff alleges "Defendant now sends Plaintiff purely promotional

11  emails on a nearly daily basis.  Furthermore, Plaintiff believes he has received a more

12  generalized increase in the email traffic from retailers indicating that Defendant may

13  have shared or sold his email address to others without his permission."  (Id. at 5:18-21.)

14  Moreover, "Plaintiff alleges that Defendant utilized the email address he provided to

15  reverse append and obtain other additional personal identification information about

16  him."  (Id. at 5:14–15.)

17

18                    **STANDARD**

19

20      **A.      Motion to Dismiss**

21

22      On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all

23  allegations of material fact must be accepted as true and construed in the light most

24  favorable to the non-moving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38

25  (9th Cir. 1996).  Rule 8(a)(2) "requires only 'a short and plain statement of the claim

26  showing that the pleader is entitled to relief,' in order to 'give the defendant a fair notice

27  of what the . . . claim is and the grounds upon which it rests.'"

28  ///

1  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (1997) (quoting Conley v. Gibson,

2  355 U.S. 41, 47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss

3  does not require detailed factual allegations.  Id.  However, "a plaintiff's obligations to

4  provide the grounds of his entitlement to relief requires more than labels and

5  conclusions, and a formulaic recitation of the elements of a cause of action will not do."

6  Id. (citations and internal quotation marks omitted).  A court is not required to accept as

7  true a "legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S.

8  662, 678 (2009) (quoting Twombly, 550 U.S. at 555).  "Factual allegations must be

9  enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555

10  (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216

11  (3d ed. 2004) (stating that the pleading must contain something more than a "statement

12  of facts that merely creates a suspicion [of] a legally cognizable right of action.")).

13        Furthermore, "Rule 8(a)(2) . . . requires a 'showing,' rather than a blanket

14  assertion, of entitlement to relief."  Twombly, 550 U.S. at 556 n.3 (citations and internal

15  quotation marks omitted).  "Without some factual allegation in the complaint, it is hard to

16  see how a claimant could satisfy the requirements of providing not only 'fair notice' of the

17  nature of the claim, but also 'grounds' on which the claim rests."  Id. (citing 5 Wright &

18  Miller, supra, § 1202).  A pleading must contain "only enough facts to state a claim to

19  relief that is plausible on its face."  Id. at 570.  If the "plaintiffs . . . have not nudged their

20  claims across the line from conceivable to plausible, their complaint must be dismissed."

21  Id.  However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that

22  actual proof of those facts is improbable, and 'that a recovery is very remote and

23  unlikely.'"  Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

24  ///

25  ///

26  ///

27  ///

28  ///

4

1

2

**B.      Law Applied in Diversity**

3

"[F]ederal courts sitting in diversity jurisdiction apply state substantive law,"

Freund v. Nycomed Amersham, 347 F.3d 752, 761 (9th Cir. 2003), and in this case the

parties agree California law applies.  "In a case requiring a federal court to apply

California law, the court 'must apply the law as it believes the California Supreme Court

would apply it.'"  Kairy v. SuperShuttle Int'l, 660 F.3d 1146, 1150 (9th Cir. 2011) (quoting

Gravquick A/S v. Trimble Navigation Int'l, Ltd., 323 F.3d 1219, 1222 (9th Cir. 2003)).  "In

the absence of a controlling California Supreme Court decision, the [court] must predict

how the California Supreme Court would decide the issue, using intermediate appellate

court decisions, statutes, and decisions from other jurisdictions as interpretive aids."  Id.

**ANALYSIS**

**A.      California Credit Card Act Claim**

Plaintiff alleges that Defendant violated the California Credit Card Act by

requesting and recording Plaintiff's email address during the sale process at Defendant's

retail store, and then using that information for direct email marketing.  The Song–

Beverly Credit Card Act provides:

> (a) . . . [N]o person . . .  or corporation that accepts credit cards for the transaction of business shall . . . .
>
> . . . .
>
> (2) Request, or require as a condition to accepting the credit card as payment in full or in part for goods or services, the cardholder to provide personal identification information, which the person . . . or corporation accepting the credit card writes, causes to be written, or otherwise records upon the credit card transaction form or otherwise.

///

5

Cal. Civ. Code § 1747.08(a) (emphasis added).  Moreover, the statute defines "personal identification information" to mean "information concerning the cardholder, other than information set forth on the credit card, and including, but not limited to, the cardholder's address and telephone number."  Id. § 1747(b).  The statute imposes civil penalties for violations "not to exceed two hundred fifty dollars ($250) for the first violation and one thousand dollars ($1,000) for each subsequent violation"; however, "no civil penalty shall be assessed for a violation of this section if the defendant shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error . . . ."  Id. § 1747(e).

The statute makes no mention of email addresses as "personal identification information," and Defendant moves to dismiss arguing "an email address[] does not meet Song–Beverly's definition of [personal identification information]."  Even if it did, Defendant claims its conduct still did not violate the Act.  (Opening Supplemental Brief in Supp. of Mot. to Dismiss ("Def.'s Supp. Brief") 3:1, ECF No. 12.)  Thus, the issues to be decided in adjudicating Defendant's Motion are (1) whether an email address constitutes "personal identification information" as these terms are defined in the statute, and (2) if so, whether Defendant's alleged conduct in this case violates the Credit Card Act such that Plaintiff states a claim for relief.  The Court now addresses each of those contentions in turn.

### 1.    Email Address as "Personal Identification Information"

Defendant argues Plaintiff's claim should be dismissed because an email address is not "personal identification information" as defined by the Credit Card Act.  The Court is aware of no published case deciding this question, and the parties agree this case presents an issue of first impression.  (Def.'s Supp. Brief 3:23–26 ("To Nordstrom's knowledge, no court of review or other published authority has ever reached a decision on whether an email address constitutes ['personal identification information'] for

purposes of Song–Beverly.  This specific statutory interpretation is an issue of first impression."); see generally Pl. Robert Capp's Supplemental Brief in Opp'n to Def's Mot. to Dismiss ("Pl.'s Supp. Opp'n"), ECF No. 14 (citing no case law deciding whether an email constitutes "personal identification information" under the Credit Card Act).)  Accordingly, "[i]n the absence of a controlling California Supreme Court decision," this Court is tasked with "predict[ing] how the California Supreme Court would decide the issue." Kairy, 660 F.3d at 1150.[2]  As such, the Court begins by reviewing principles of statutory interpretation articulated by the California Supreme Court.

In answering questions of statutory interpretation, the California Supreme Court "look[s] first to the words of a statute, 'because they generally provide the most reliable indicator of legislative intent.'"  Pineda v. Williams-Sonoma Stores, Inc., 51 Cal. 4th 524, 529 (2011) (quoting Hsu v. Abbara, 9 Cal. 4th 863, 871 (1995)).  The words are given "their usual and ordinary meaning," but they are also "constru[ed] . . . in light of the statute as a whole and the statute's purpose." Id.  If the statute's purpose is "for the protection of the public," then the statute is "generally, broadly construed in favor of that protective purpose." Id. (quoting People ex rel. Lungren v. Superior Court, 14 Cal. 4th 294, 313 (1996)).  Moreover, "[u]nder the principle of statutory construction known as 'ejusdem generis,' the general term ordinarily is understood as being 'restricted to those things that are similar to those which are enumerated specifically.'"  Costco Wholesale Corp. v. Superior Court, 47 Cal. 4th 725, 743 (2009).

The California Supreme Court recently applied these principles to interpret the words "personal identification information" contained in § 1747.8 to include a cardholder's ZIP code in Pineda v. Williams-Sonoma Stores, Inc., 51 Cal. 4th 525 (2011).  In Pineda, the plaintiff sued the defendant retailer alleging that, as she paid for her purchase with a credit card, the cashier asked for her ZIP code.  Id. at 527.

---

[2] The Court notes that the California Court of Appeal for the Fourth District upheld a trial court's determination that an email address constitutes "personal identification information" in an unpublished portion of an opinion that, therefore, cannot be cited as precedent under California rules.  See generally Powers v. Pottery Barn, Inc., 177 Cal. App. 4th 1039 (2009) (partially published and partially unpublished).

The plaintiff furnished her ZIP code, the cashier recorded it, and the defendant allegedly used her name and ZIP code to locate her home address.  The trial court concluded a ZIP code does not constitute "personal identification information" and granted a demurrer, the Court of Appeal affirmed, but the California Supreme Court reversed.  The unanimous court held "in light of the statutory history and evident purpose of the statute, we hold that personal identification information, as that term is used in section 1747.08, includes a cardholder's ZIP code."  Id. at 534.

The California Supreme Court's reasoning in Pineda in reaching this conclusion assists this Court with its task of predicting how the California Supreme Court would decide whether an email address constitutes "personal identification information."  The supreme court first considered the intermediate appellate court's application of the esjudem generis principle.  The court of appeal below reasoned that because the statutory definition provision, although couched in general terms, included two examples—"the cardholder's address and telephone numbers," Cal. Civ. Code § 17048(b)—which are "specific in nature regarding an individual," the definition therefore necessarily excludes a ZIP code because by contrast the code "pertains to the group of individuals within the ZIP code."  Id. at 531–32 (emphasis in original).  The California Supreme Court rejected this argument, because "a cardholder's ZIP code . . . can be used, together with the cardholder's name, to locate his or her full address," and a cardholder's address and her ZIP code "both constitute information unnecessary to the sales transaction that . . . can be used for the retailer's business purposes."  Id. at 532.

Moreover, the court in Pineda reasoned that its broad interpretation of the terms "personal identification information" to include ZIP codes was consistent with the protective purpose of the statute.  The court cited the statute's legislative history and reasoned that Cal. Civ. Code § 1747.8 was enacted "to address the misuse of personal identification information for . . . marketing purposes, and finding that there would be no legitimate need to obtain such information from credit card customers if it was not necessary to the completion of the credit card transaction."

1  Id. at 539 (internal alteration omitted) (citing (Cal. Assemb. B. No. 1477 (1991–1992

2  Reg. Sess.) §§ 1–2)) (quoting Absher v. Autozone, 164 Cal. App. 4th 332, 345 (2008)).

3  The court in Pineda concluded "[t]he statute's overriding purpose," when enacted, "was

4  to 'protect the personal privacy of consumers who pay for transactions with credit

5  cards.'"  Id. (quoting Cal. Assemb. Comm. on Fin. & Ins., Analysis of Assemb. B. No.

6  2920 (1989–1990 Reg. Sess.) as amended Mar. 19, 1990, at p. 2)).

7       Finally, the court in Pineda reasoned that its broad interpretation of "personal

8  identification information" was supported by the fact the statute's provision was

9  subsequently amended to "broaden[]" its applicability and prevent circumvention of its

10  protective purpose.  Id. at 539.  The court observed that interpreting the terms narrowly,

11  as the Court of Appeal had, "would permit retailers to obtain indirectly what they are

12  clearly prohibited from obtaining directly," since a ZIP code, used together with a

13  customer's name, "could easily be used to obtain the cardholder's complete address or

14  telephone number."  Id. at 532–33.  The court found this consequence inconsistent with

15  the statute's purpose, particularly in light of its subsequent broadening amendment.

16  That the "1991 amendment prevents a retailer from making an end-run around the law,"

17  the court reasoned, evinced "the Legislature . . . intended a broad consumer protection

18  statute."  Id.

19       Defendant contends Pineda is distinguishable because, unlike a ZIP code, "an

20  email address can be anything chosen by the owner . . . , can change easily, and a

21  person can have multiple"; whereas, "the same is not necessarily true of phone numbers

22  . . . , or home addresses and zip codes . . . , which are tied to a fixed geographic location

23  and not easy to change."  (Def.'s Supp. Brief 6:14–18 (emphasis in original).)  Moreover,

24  Defendant points outs that an email address can be anonymous and "cannot be used to

25  call consumers during dinnertime or to show up on their doorstep in the middle of the

26  night . . . in the way that a home address or phone number can be abused."  (Id. at

27  6:2-12.)

28  ///

1   Further, Defendant asks the Court to take judicial notice of the Credit Card Act's

2   legislative history to support its argument that because "email addresses were not used

3   by . . . consumers at the time [the statute] was enacted in 1971, or even when it was

4   amended," this Court would be engaging in "pure speculation" if it interpreted the terms

5   "personal identification information" to include not only conventional mail addresses but

6   also electronic mail addresses. (Id. at 9:3–1; see also Req. for Judicial Notice by

7   Nordstrom, Inc., ECF No. 13.)

8          Plaintiff counters that the conclusion that his email address constitutes "personal

9   identification information" follows directly from the supreme court's reasoning and

10   analysis in Pineda.  Specifically, Plaintiff argues that like a ZIP code, an email address

11   "constitute[s] information unnecessary to the sale transaction that, alone or together with

12   other data such as a cardholder's name or credit card number can be used for the

13   retailer's business purpose."  (Pl.'s Supp. Opp'n 15:1–3 (quoting Pineda, 47 Cal. 4th at

14   532).)  Specifically, Plaintiff points to his allegations in his Complaint at paragraphs 3

15   and 22 "that Defendant utilized [his] collected email address to reverse append and

16   obtain additional information concerning the customer.  A basic Google search shows

17   that scores of companies" can use an email address, together with credit card

18   information, "to locate the cardholder's full address or telephone number."  (Id. at 9:21–

19   26.)  Plaintiff also requests that the Court take judicial notice of his attached exhibits

20   demonstrating that various companies, through their websites, claim the ability to

21   "reverse append email addresses to obtain customers' names, street addresses and

22   telephone numbers."  (See Pl.'s Supp. Opp'n 9:16–20 (citing Pl.'s Req. for Judicial

23   Notice, Ex. B).)

24          Here, the Court's interpretation of "personal identification information" begins with

25   the "words of [the] statute," Pineda, 51 Cal. 4th at 529; and section 1747.08(b) defines

26   "personal identification information" as "information concerning the cardholder . . .

27   including but not limited to, the cardholder's address and telephone number."

28   ///

1  The California Supreme Court has interpreted the word "concerning" as used in this

2  statute as a "broad term meaning 'pertaining to; having relation to; or respecting,'" and

3  has concluded that a ZIP code "pertains to or regards to a cardholder," because it "refers

4  to the area where a cardholder works or lives." Pineda, 51 Cal. 4th at 531 (internal

5  alteration omitted) (quoting Webster's New International Dictionary 552 (2d ed. 1941)).

6  In this case, an email address is within the scope of the statute's "broad term[s]"

7  "concerning the cardholder" as well because a cardholder's email address "pertain[s] to

8  or regards to a cardholder" in a more specific and personal way than does a ZIP code.

9  Id.  Instead of referring to the general area in which a cardholder lives or works, a

10  cardholder's email address permits direct contact and implicates the privacy interests of

11  a cardholder.  Cf. Families for Freedom v. U.S. Customs & Border Prot., 837 F. Supp. 2d

12  287, 302 (S.D.N.Y. 2011) (holding that the email addresses of certain government

13  employees are exempt from Freedom of Information Act disclosure requirements,

14  reasoning "the disclosure of the names, phone numbers, and email addresses of

15  government employees implicates more than a de minimis privacy interest of those

16  employees."  (emphasis added)); Elec. Frontier Found. v. Office of the Dir. of Nat'l

17  Intelligence, 639 F.3d 876, 888 (9th Cir. 2010) ("[W]e can easily envision possible

18  privacy invasions resulting from public disclosure of [certain government employees']

19  email addresses.  [Plaintiff] provides no argument, and we can think of none, countering

20  our conclusion that the email addresses may add to the risk of privacy invasion with little

21  additional benefit to the public interest.").  Therefore, this Court predicts that the

22  California Supreme Court would decide that an email address constitutes "personal

23  identification information" as those terms are defined by section 1747.08(b) of the Credit

24  Card Act.

25      Significantly, this interpretation not only follows from the text of the statute, it is

26  consistent with "the statute as a whole and the statute's purpose."  Pineda, 51 Cal. 4th at

27  535.

28  ///

1    In Pineda, the California Supreme Court reviewed the legislative history of the Credit

2    Card Act and concluded the California Legislature enacted this statute "to address the

3    misuse of personal identification information for, inter alia, marketing purposes, and

4    [found] that there would be no legitimate need to obtain such information from credit card

5    customers if it was not necessary to the completion of the credit card transaction." Id. at

6    534 (citing Cal. Assemb. B. No. 2920 (1989–1990 Reg. Sess.) § 1).  "The statute's

7    overriding purpose was to 'protect the personal privacy of consumers who pay for

8    transactions with credit cards,'" the court reasoned, and the legislative history

9    "demonstrates the Legislature intended to provide robust consumer protections by

10   prohibiting retailers from soliciting and recording information about the cardholder that is

11   unnecessary to the credit card transaction." Id. at 534–36.  Defendant's alleged conduct

12   in this case—acquiring Plaintiff's email address for one reason, sending him a receipt,

13   and then using the address for another reason, to send him promotional emails and to

14   resell that information to other companies—directly implicates the purposes of the

15   statute as articulated by the California Supreme Court.  See id. at 534–35 (quoting the

16   legislative history as follows: "The Problem [¶] . . . [¶] Retailers acquire this additional

17   personal information for their own business purposes—for example, to build mailing and

18   telephone lists which they can subsequently use for their own in-house marketing efforts,

19   or sell to direct-mail or tele-marketing specialists, or to others."  (quoting S. Comm. on

20   Judiciary, Analysis of Cal. Assemb. B. No. 2920 (1989–1990 Reg. Sess.) as amended

21   June 27, 1990, at pp. 3–4)).  Moreover, although this interpretation of the statute is

22   broader than the construction advocated by Defendant, it is consistent with the rule that

23   California "courts should liberally construe remedial statutes in favor of their protective

24   purpose, which, in the case of section 1747.08, includes addressing 'the misuse of

25   personal identification information for, inter alia, marketing purposes.'" Id. at 532

26   (citation omitted).

27   ///

28   ///

12

1    As discussed above, Defendant advocates that the Court take a contrary view of

2    the legislative history of the Credit Card Act, arguing that because the legislative history

3    "never mentions email addresses" specifically, the "Legislature could not have intended

4    to include email addresses . . . because [the Credit Card Act's enactment] predates its

5    possible applicability to new technology such as email and e-receipts." (Def.'s Supp.

6    Brief 9:1–2, 10:7–9.)  To support this argument, Defendant cites the reasoning of the

7    California Supreme Court in Apple, Inc. v. Superior Court, 56 Cal. 4th 128 (2013), a case

8    in which the court held that the Credit Card Act's protections do not apply to online

9    purchases of downloadable music.  However, Defendant's reliance on Apple is

10   misplaced, since a careful reading of the court's analysis in Apple supports this Court's

11   conclusion that the Credit Card Act applies to email addresses.

12   In Apple, the defendant, Apple, made an argument similar to Defendant's in this

13   case: Apple argued that because the first sentence of section 1747.08(a) used the

14   language "credit card transaction form" together with the word "write," "the Legislature

15   had in mind only in-person business transactions," and therefore did not intend for the

16   statute to apply to online music purchases.  Id. at 137.  The court rejected this argument:

17

18          The statutory language suggests that the Legislature, at the
            time it enacted former section 1747.8, did not contemplate
            commercial transactions conducted on the Internet.  But it
19          does not seem awkward or improper to describe the act of
            typing characters into a digital display as "writing" on a
20          computerized "form."  In construing statutes that predate their
            possible applicability to new technology, courts have not
21          relied on wooden construction of their terms.  Fidelity to
            legislative intent does not "make it impossible to apply a legal
22          text to technologies that did not exist when the text was
            created . . . .  Drafters of every era know that technological
23          advances will proceed apace and that the rules they create
            will one day apply to all sorts of circumstances they could not
24          possibly envision."

25   Id. (emphasis added) (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The

26   Interpretation of Legal Texts 85–86 (2012)).

27   ///

28   ///

1  Just as the act of typing onto a digital display was held analogous to "writing" on a "form"

2  (albeit computerized) in Apple, so too is an electronic mailing address analogous to a

3  physical mailing address.  Further, the court's ultimate holding in Apple—that the Act did

4  not apply to online music downloads—was based not on the historical fact that the

5  Legislature had not considered the prospect of electronic music downloads in 1971 or

6  1991; instead, the court's holding was based on the fact that the Credit Card Act "did not

7  intend to achieve privacy protection without regard to exposing consumers and retailers

8  to undue risk of fraud."  Id. at 139 (emphasis added).  The court held that the Act does

9  not prohibit the collection of personal identification information in connection with

10  electronic music downloads because "the safeguards against fraud in section

11  1747.08(d)," (which permit the retailer to ask for "a driver's license," among other means,

12  to prevent fraud), "are not available to the online retailer selling an electronically

13  downloadable product," id. at 140 (emphasis added), not because electronic downloads

14  represent a new technology not then contemplated by the Credit Card Act's drafters.[3]

15      Further, Defendant's arguments distinguishing electronic mail addresses from zip

16  codes and physical mail addresses do not address a key portion of the reasoning

17  employed by the court in Pineda.  In Pineda, the court reasoned that a zip code

18  "together with other data such as a cardholder's name or credit card number, can be

19  used . . . . to locate his or her full address."  51 Cal. 4th at 532.  Thus, the court

20  concluded that interpreting the statute narrowly not to apply to zip codes "would permit

21  retailers to obtain indirectly what they are clearly prohibited from obtaining directly, 'end-

22  running' the statute's clear purpose."  Id. at 532–33.  So too with email addresses.

23  Plaintiff alleges that, just as with zip codes, companies can use an email address

24  together with other data to locate a cardholder's full street address.

25      _____

26      [3] Defendant asks that the Court take judicial notice of various documents as evidence of the legislative history of the Credit Card Act.  (ECF No. 13.)  Since the Court is tasked with predicting how the California Supreme Court would decide the question sub judice, the Court finds the supreme court's

27  summary of the legislative history contained in its opinion in Pineda sufficient, and need not consider the documents Defendant requests be judicially noticed.  Accordingly, Defendant's request is DENIED.

28

1   (See Compl. ¶¶ 22-23 (alleging Defendant "utilized" Plaintiff's email address to "reverse

2   append and obtain other personal identification information about him"); Cahill, 80 F.3d

3   at 337–38 ("allegations of material fact are taken as true and construed in the light most

4   favorable to the nonmoving party").  Therefore, interpreting the statute narrowly as

5   Defendant suggests would permit an "'end-run[]" around "the statute's clear purpose," a

6   result the California Supreme Court eschewed in Pineda.  Id.[4]

7        Finally, the Court briefly addresses Defendant's argument that Plaintiff's

8   interpretation would expose retailers to unexpected liability "because the statute's

9   definition is too vague and ambiguous" in violation of constitutional due process.  (Def.'s

10  Supp. Brief 15:12–21.)  The Credit Card Act "enjoys a presumption of constitutionality,"

11  Forbes v. Napolitano, 236 F.3d 1009, 1012 (9th Cir. 2000), and because "the statute

12  regulates the conduct of businesses . . . , the vagueness test is relaxed."  Big Bear

13  Super Market No. 3 v. INS, 913 F.2d 754, 757 (9th Cir. 1990); see also id. ("A greater

14  degree of ambiguity will be tolerated in statutes which—like the one challenged here—

15  merely impose civil, as opposed to criminal penalties.").  Here, the statute at issue

16  provides constitutionally adequate notice of the proscribed conduct because the statute's

17  language is not overly vague and ambiguous and includes a specific reference to the

18  example of a cardholder's physical mail "address" which, as discussed above, is not

19  unreasonably distinct from a cardholder's electronic mail address.

20  ///

21  ///

22  ///

23  ///

24  ///

25

26  _____

    [4] Plaintiff requests that the Court take judicial notice of various documents evincing that
    companies claim the ability to obtain a full street address from a name and email address.  (ECF No. 14.)

27  However, since this fact cannot be "accurately and readily determined from sources whose accuracy
    cannot reasonably be questioned," Fed. R. Evid. 201(b)(2), Defendant's objection to Plaintiff's request for
    judicial notice is SUSTAINED, and Plaintiff's request is DENIED.

28

### 2.    Whether Defendant's Conduct Violated the Credit Card Act

Defendant also argues Plaintiff fails to allege facts sufficient to state a claim under the Credit Card Act.  Specifically, Defendant argues Plaintiff does not "allege facts" in his Complaint "sufficient to meet the threshold pleading standard that [Defendant] led Plaintiff to mistakenly believe that his email address was required to process his transaction."   (Def.'s Supp. Brief 12:8–12.)  Defendant also argues its request for Plaintiff's email address to send an electronic receipt falls within the exception provided for requests of information "required for a special purpose incidental but related to the . . . the credit card transaction" (id. at 17:9–13), and that "preventing a retailer from requesting" an email address "would be an overbroad . . . restriction" of commercial speech under the First Amendment (id. at 16:18–22).

Plaintiff counters that he has plead sufficient facts to survive dismissal. Specifically, Plaintiff points to allegations in his complaint alleging that Plaintiff "perceived the request as a condition" and "did not believe he could obtain the receipt he desired if he did not affirmatively respond to Defendant's request for his email address." (Pl.'s Supp. Opp'n 13:15–18.)  Regarding Defendant's argument that its conduct is within an exception, Plaintiff argues Defendant's conduct does not fall within the exception because the request for an email address is not "a necessary further act related to the purchased merchandise," unlike "[s]hipping," "delivery," "servicing," and "installations" which are the enumerated examples contained in the exception provision.  (Id. at 17:8-14.)  Moreover, Plaintiff argues these issues "cannot be resolved in a motion to dismiss as [they involve] evidentiary matter[s]."  (Id. at 13:12-15.)  The Court agrees with Plaintiff's last point.

///

///

///

///

The pertinent portion of section 1747.08(c)(4) provides: "[The rule contained in] Subdivision (a) does not apply . . . [i]f personal identification information is required for a special purpose incidental but related to the individual credit card transaction, including, but not limited to, information relating to shipping, delivery, servicing, or installation of the purchased merchandise, or for special orders." Here, Plaintiff alleged in his Complaint that he "believed that he was required to provide his email address information in order to complete the transaction and receive his receipt" (Compl. ¶ 18), which is sufficient to state a claim under the Credit Card Act. Whether this belief was "reasonable" must be determined taking into account the surrounding facts and circumstances—an issue that cannot be resolved on a motion to dismiss, since at this stage Plaintiff need plead "only enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Moreover, whether Plaintiff's email address was "required for a special purpose incidental . . . to the individual credit card transaction" is likewise an issue that requires further factual development.

Finally, Defendant's First Amendment argument is without merit, because the First Amendment protects expressive speech, not conduct, and requesting a customer's email address "is not the kind of verbal act that the First Amendment protects. It has no connection to the marketplace of ideas and opinions . . . ." King v. Fed. Bureau of Prisons, 415 F.3d 634, 637 (7th Cir. 2005) (Posner, J.) (rejecting plaintiff's argument "that not letting him talk to his broker on the phone infringes freedom of speech").

In sum, Defendant has not met its burden to show Plaintiff fails to state a claim for which relief may be granted, and this portion of Defendant's motion is DENIED.

## B.    Federal Preemption

Defendant argues that Plaintiff's California Credit Card Act claim is preempted by the federal CAN-SPAM Act. Congress enacted the CAN-SPAM Act of 2003 to control "the rapid growth and abuse of unsolicited commercial electronic mail."

1   Pub L. No. 108-187, § 2(a)–(b), 117 Stat. 2699 (2003) (codified as amended at

2   15 U.S.C. §§ 7701–7713).  The statute, among other things, prohibits the transmission

3   of false or misleading information by email for commercial purposes.  15 U.S.C.

4   § 7704(a)(1).

5          The statute contains an express preemption provision, which states the following:

6   "This chapter supersedes any statute, regulation, or rule of a State or political

7   subdivision of a State that expressly regulates the use of electronic mail to send

8   commercial messages . . . ."  Id. § 7707(b)(1).  However, the statute also includes a

9   clause that limits the applicability of the preemption provision, i.e., a "savings clause":

10  "This chapter [does not] supersede[] any such [State] statute, regulation, or rule [that]

11  prohibits falsity or deception in any portion of a commercial electronic mail message or

12  information attached thereto."  Further, subsection (b)(2) of this provision also states that

13  state law not specific to electronic mail is not preempted:

14

15             (2) State law not specific to electronic mail

16             This chapter shall not be construed to preempt the
               applicability of—
17

18             (A) State laws that are not specific to electronic mail,
               including State trespass, contract, or tort law; or

19             (B) other State laws to the extent that those laws relate to
               acts of fraud or computer crime.
20

21  Id. § 7707(b)(2).

22         Defendant argues CAN-SPAM's preemption provisions should be interpreted

23  broadly to preempt all state laws that regulate email, except "those [state] laws or

24  regulations that target fraud or deception—in other words traditional tort claims based in

25  misrepresentation."  (Notice of Mot. & Mot. to Dismiss Pl.'s Compl.; Mem. P. & A. ("Def.'s

26  Mot. to Dismiss") 1:20–23, ECF No. 6.)

27  ///

28  ///

18

1    Defendant supports this argument by observing Congress "noted that the individual

2    State's attempts at regulating commercial mail messaging had led to a 'patchwork of

3    liability standards' that had proven ineffective," and arguing that "Congress enacted

4    CAN-SPAM to create a single national standard."  (Id. at 5:4–16.)  Because Plaintiff's

5    Credit Card Act claim is "not a type of 'tort action' based on misrepresentation,"

6    Defendant argues his claim is preempted.  (Id. at 5:18–11.)  Defendant supports this

7    conclusion by citing a district court opinion, Facebook Inc. v. ConnectU, LLC,

8    489 F. Supp. 2d 1087 (N.D. Cal. 2007).  (Id. at 6:12–26.)

9         Plaintiff counters he "never claimed in the complaint . . .  that Defendant's usage

10   of Plaintiff's email address to send unrequested and unwanted commercial messages

11   was a violation" of the Credit Card Act; instead, his claim is simply that Defendant

12   violated the Act when its employee "requested and recorded the email address in

13   conjunction with a credit card transaction."  (Pl. Robert Capp's Mem. P. & A. in Opp'n to

14   Def. Nordstrom, Inc.'s Mot. to Dismiss Pl.'s Class Action Compl. ("Pl.'s Opp'n to Mot. to

15   Dismiss") 3:23–27, ECF No. 7.)  Plaintiff further argues "Congress' findings and policy

16   considerations" evince that "CAN-SPAM was never intended to preempt State consumer

17   protection laws proscribing the collection of personal identification information including

18   email addresses."  (Id. at 8:4–10:20.)  Plaintiff also contends the text of the act supports

19   the conclusion that "the statute was never intended to preempt . . . State consumer

20   protection laws regulating the collection of personal identification information including

21   email addresses."  (Id. at 10:21–23.)  Specifically, Plaintiff points to the following

22   language in the statute: "This chapter supersedes any statute . . . of a State that

23   expressly regulates the use of electronic mail to send commercial messages. . . .  This

24   chapter shall not be construed to preempt the applicability of . . . State laws that are not

25   specific to electronic mail . . . ."  (Id. at 10:8–14 (emphasis added by Plaintiff) (quoting

26   15 U.S.C. § 7707).)

27   ///

28   ///

Federal preemption doctrine derives from the Supremacy Clause of the U.S. Constitution, which provides in pertinent part "the Laws of the United States . . . shall be the supreme Law of the Land." U.S. CONST. art. VI, cl. 2. "Consistent with that command, . . . state laws that conflict with federal law are 'without effect.'" Altria Grp., Inc. v. Good, 555 U.S. 70, 76 (2008). "There are three circumstances in which state law is preempted under the Supremacy Clause by federal law":

> (1) express preemption, where Congress explicitly defines the extent to which its enactments preempt state law;
>
> (2) field preemption, where state law attempts to regulate conduct in a field that Congress intended the federal law exclusively to occupy; and
>
> (3) conflict preemption, where it is impossible to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress.

Indus. Truck Ass'n, Inc. v. Henry, 125 F.3d 1305, 1309 (9th Cir. 1997) (citation omitted). In this case, CAN-SPAM includes an express preemption clause and a savings clause, so the issues are whether Plaintiff's claim under California's Credit Card Act is barred by either express preemption or conflict preemption.[5]

Although analysis of a statute's express preemption clause "begins with the text, 'interpretation of that language does not occur in a contextual vacuum.' Rather, this inquiry is guided by two principles . . . ." Gordon v. Virtumundo, Inc., 575 F.3d 1040, 1060 (9th Cir. 2009) (citation omitted). First, under the "presumption against . . . preemption," id., the court "start[s] with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." Medtronic v. Lohr, 518 U.S. 470, 485 (1996).

---

[5] See Cipollone v. Liggett Grp., Inc., 505 U.S. 504, 547 (1992) (Scalia, J., concurring in part and dissenting in part) ("The existence of an express pre-emption provision tends to contradict any inference that Congress intended to occupy a field broader than the statute's express language defines.").

1   The presumption against preemption "applies with particular force when Congress has

2   legislated in a field traditionally occupied by the States." Altria, 555 U.S. at 77. "Thus,

3   when the text of a pre-emption clause is susceptible [to] more than one plausible

4   reading, courts ordinarily 'accept the reading that disfavors pre-emption.'" Id. Second,

5   "'the purpose of Congress is the ultimate touchstone' in every pre-emption case," and

6   "any understanding of the scope of a pre-emption statute must rest primarily on 'a fair

7   understanding of congressional purpose.'" Medtronic, 518 U.S. at 485–86.

8          If a federal statute "contains an express pre-emption clause, [the court's] 'task of

9   statutory construction must in the first instance focus on the plain wording of the clause,

10  which necessarily contains the best evidence of Congress' pre-emptive intent.'"

11  Sprietsma v. Mercury Marine, 537 U.S. 51, 62–63 (2002). Here, the express preemption

12  clause of CAN-SPAM states, "This chapter supersedes any statute . . . of a State that

13  expressly regulates the use of electronic mail to send commercial messages . . . ."

14  15 U.S.C. § 7707(b)(1) (emphasis added). This language is most naturally read as not

15  encompassing the Credit Card Act, as applied to email-address requests, for two

16  reasons. First, the words "use of electronic mail to send commercial messages" imply

17  that CAN-SPAM preempts only state statutes that regulate the manner in which an email

18  is actually transmitted and delivered ("use"), and the content of that email ("commercial

19  messages"); whereas California's Credit Card Act does not regulate either the content of

20  the email message or the manner in which it is transmitted—but instead only regulates

21  the request for the email address. Second, the adverb "expressly" before the word

22  "regulates" implies that a state statute is preempted only if it specifically and

23  unequivocally applies to email messages, and the Credit Card Act only applies to email

24  addresses as interpreted by this Court.

25  ///

26  ///

27  ///

28  ///

1  Moreover, this narrow construction of the express preemption clause—unlike

2  Defendant's proposed broad interpretation—is consistent with the presumption against

3  preemption, which "applies with particular force when Congress has legislated in a field

4  traditionally occupied by the States," such as consumer protection.  <u>Altria</u>, 555 U.S. at

5  77.[6]

6       This conclusion is consistent with Congress's purpose.  Contrary to Defendant's

7  assertion, California's Credit Card Act does not stand as an obstacle to the

8  accomplishment of the objectives of Congress in enacting CAN-SPAM.  For one,

9  Defendant can easily conform its conduct to the proscriptions contained in both acts; it is

10  not "impossible for a private party to comply with both state and federal requirements."

11  <u>English v. Gen. Elec. Co.</u>, 496 U.S. 72, 79 (1990).  For instance, a retailer like Defendant

12  can wait until after "the customer has already received her [written] receipt" to request

13  the customer's email address under the Credit Card Act, and then send commercial

14  email messages that conform to the prescriptions of CAN-SPAM without the prospect of

15  liability under either statute.  <u>Davis v. Devanlay Retail Grp., Inc.</u>, No. 2:11-cv-01719

16  KJM-CKD, 2012 WL 6589204, at *4 (E.D. Cal. Dec. 17, 2012) (granting defendant

17  retailer's motion for summary judgment where retailer's policy mandated "waiting until

18  the customer has her receipt in hand" to request "a zip code . . . not necessary to

19  complete the transaction").  Accordingly, the congressional concern expressed by

20  Defendant—that state laws can lead to "a patchwork of liability standards" necessitating

21  a single national standard—is inapposite in this case.

22       Second, the protective purpose of California's Credit Card Act, as applied to

23  email-address requests, is consistent with CAN-SPAM's stated objectives.  In the

24  findings section of CAN-SPAM, Congress found:

25  _____

26      [6] Since the Court finds Plaintiff's Credit Card Act claim is not barred by "express preemption" or
"implied preemption," it need not decide whether Plaintiff's claim is within the savings clause of CAN-

27  SPAM.  As such, the Ninth Circuit's decision in <u>Gordon</u>, 575 F.3d at 1059–64 (interpreting the savings
clause of CAN-SPAM narrowly "to save from preemption only 'statutes, regulations, or rules that target

28  fraud or deception'") does not apply to this case.

1
2

> (2) The convenience and efficiency of electronic mail are threatened by the extremely rapid growth in the volume of <u>unsolicited commercial electronic mail</u> . . . .

3
4
5

> (3) The receipt of <u>unsolicited</u> commercial electronic mail may result in costs to recipients who cannot refuse to accept such mail and who incur costs for the storage of such mail, or for the time spent accessing, reviewing, and discarding such mail, or for both.

6
7
8
9

> (4) The receipt of a large number of <u>unwanted</u> messages also decreases the convenience of electronic mail and creates a risk that wanted electronic mail messages, both commercial and noncommercial, will be lost, overlooked, or discarded amidst the larger volume of unwanted messages, thus reducing the reliability and usefulness of electronic mail to the recipient.

10   15 U.S.C. § 7701(a) (emphasis added).  Here, California's Credit Card Act's prohibition

11   on the request of "personal identification information," including email addresses, will

12   most likely have the effect of furthering the purpose of CAN SPAM.  The "volume of

13   unsolicited" and "unwanted," "commercial electronic mail" will be reduced because the

14   number of email addresses available to companies that accept credit cards for the

15   transaction of business will decline under the Credit Card Act, unless the customer

16   specifically requests, or accepts an offer after the transaction, to be placed on the

17   mailing list.  Thus, the Credit Card Act will not "stand[] as an obstacle to the

18   accomplishment and execution of the full purposes and objectives of Congress."

19   <u>Medtronic</u>, 518 U.S. at 496.

20        Defendant invites this Court to follow the analysis of another district court within

21   the Northern District of California in <u>Facebook Inc. v. ConnectU, LLC</u> as persuasive

22   authority, but <u>Facebook</u> does not support preemption in this case.  489 F. Supp. 2d 1087

23   (N.D. Cal. 2007) (Seeborg, M.J.).  In <u>Facebook</u>, a competitor to Facebook's social media

24   website, ConnectU, collected email addresses from Facebook members' profiles "and

25   then sent emails to those users soliciting their patronage" on its rival website.  <u>Id.</u> at

26   1089.  The court held that Facebook's claim under a different California statute—Cal.

27   Bus. & Prof. Code § 17529.4—was preempted by CAN-SPAM.

28   ///

This California statute makes it unlawful for any person "to initiate or advertise in an unsolicited e-mail advertisement." Id.  Importantly, however, the court in Facebook declined to reach Facebook's argument that the California statute was not preempted because it "'primarily' regulates the collection of email addresses," reasoning: "Facebook may be correct that technically a violation of section 17529.4 could arise prior to any emails actually being sent, but [the California statute] plainly still 'regulates the use of electronic messages' within the preemptive effect of the CAN-SPAM Act." Id. at 1093–94 (emphasis in original).  In this case, the Credit Card Act does not "plainly" regulate "the use of electronic messages," unlike the statute at issue in Facebook, for the reasons set forth above, so Facebook is distinguishable.  Further, the court in Facebook expressly declined to reach the question posed by Facebook's argument—whether collecting an email address without more constitutes "the use of electronic messages" within the meaning of CAN-SPAM's preemption clause. Id. at 1094.  Therefore, Facebook is inapposite, and the Court declines Defendant's invitation to follow it as persuasive authority.

Therefore, Defendant has not met its burden to show Plaintiff fails to state a claim because his claim is preempted by CAN-SPAM, and this portion of its motion is DENIED.

### C. Defendant's Motion to Strike Plaintiff's Request for Nonmonetary Relief and Jury Trial

Defendant also moves to strike the portion of Plaintiff's Complaint to the extent Plaintiff seeks relief beyond the statutory penalties provided for in Cal. Civ. Code § 1747.08(e), and to the extent he seeks a jury trial since there is no such right under this statute because it authorizes a "pure civil penalty."  (Def.'s Mot. to Dismiss 9:13-10:28.)  Plaintiff does not oppose striking the prayer for injunctive relief and demand for a jury trial, since Plaintiff states he "will only seek civil penalties."  (Pl.'s Opp'n to Mot. to Dismiss 15:4–6.)

Rather than strike Plaintiff's Complaint, in light of Plaintiff's statement that he will only seek civil penalties, Plaintiff's Complaint is DEEMED AMENDED to seek only civil penalties and to omit his prior request for injunctive relief and prior demand for a jury trial.

**CONCLUSION**

For the reasons stated above, Defendant's Motion to Dismiss Plaintiff's Complaint (ECF Nos. 6, 12) is DENIED,[7] and Plaintiff's Complaint is DEEMED AMENDED to omit his request for injunctive relief and prior demand for a jury trial.

IT IS SO ORDERED.

Dated:  October 21, 2013

MORRISON C. ENGLAND, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[7] Because oral argument was not deemed to be of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Cal. Local Rule 230(g).