1  James M. Lindsay, State Bar No. 164758
   LINDSAY LAW CORPORATION
2  21 Natoma Street, Suite 160
   Folsom, California 95630
3  Telephone:  (916) 294-7573
   Facsimile: (916) 294-7583
4
5  Attorney for Plaintiff and the Class
6
7
8              UNITED STATES DISTRICT COURT
9              EASTERN DISTRICT OF CALIFORNIA
10

11 ROBERT CAPP, on behalf of himself and all   )   CASE NO.: 2:13-CV-00660-MCE-AC
   others similarly situated,                  )
12                                             )   **CLASS ACTION**
                              Plaintiff,        )
13          vs.                                 )   **PLAINTIFF ROBERT CAPP'S**
                                               )   **OPPOSITION TO DEFENDANT'S**
14 NORDSTROM, INC., a Washington               )   **MOTION FOR SUMMARY**
   corporation; and DOES 1 through 50, inclusive, )   **JUDGMENT OR, IN THE**
15                                             )   **ALTERNATIVE, FOR PARTIAL**
                              Defendants.       )   **SUMMARY JUDGMENT**
16                                             )
                                               )   Date:      December 4, 2014
17                                             )   Time:      2:00 p.m.
                                               )   Dept:      Courtroom 7
18                                             )   Judge:     Honorable Morrison C. England
                                               )
19 _____ )   *Complaint Filed:  March 4, 2013*
20
21
22
23
24
25
26
27
28

LINDSAY LAW CORPORATION
21 Natoma Street, Suite 160
Folsom, California 95630

1

## TABLE OF CONTENTS

2      I.      INTRODUCTION ........................................................................................ 1

3      II.     PROCEDURAL HISTORY........................................................................... 2

4      III.    DEFENDANT'S MOTION IS A BELATED AND REPETITIVE MOTION TO
               DISMISS NOT BASED UPON A MORE DEVELOPED FACTUAL RECORD........... 3
5
               A.      Defendant Continues To Accept Plaintiff's Allegations In His
6                      Complaint As True And Fails To Contest Any Pivotal Fact
                       Relating To His Individual Claim.......................................................... 3
7
               B.      Defendant's Argument That It Is Exempt From Liability Under The
8                      Special Purpose Exception Is A Purely Legal Argument That Was
                       Previously Rejected By The Court ........................................................ 5
9
       IV.     THE CREDIT CARD ACT IS TO BE INTERPRETED BROADLY TO
10             EFFECTUATE ITS CONSUMER PROTECTION OBJECTIVE ..................... 7

11     V.      THE PRIMARY PURPOSE OF DEFENDANT'S E-RECEIPT PROGRAM IS
               TO GAIN CUSTOMER PERSONAL IDENTIFICATION INFORMATION
12             AND INCREASE PROFIT............................................................................ 9

13     VI.     PLAINTIFF'S STORE EXPERIENCE WAS NOT UNIQUE AS
               DEFENDANT'S SPECIFIC POLICY IS TO AFFECT ITS CUSTOMERS'
14             PERCEPTION AS TO THE NECESSITY OF PROVIDING AN EMAIL
               ADDRESS .................................................................................................. 10
15
               A.      Defendant Trains Its Employees To Not Ask For An Email
16                     Address But Instead Direct that An Email Address Be Provided....................... 10

17             B.      Plaintiff Made His Preference Known By Initially Refusing
                       Defendant's Request ............................................................................. 13
18
               C.      Defendant's Employees Are In Complete Control Of The Email
19                     Address Request And Are Additionally Allowed Some Discretion
                       In The Manner Of Request. .................................................................. 13
20
               D.      Defendant Provides Incentive To Its Employees To Obtain
21                     Customer Email Addresses .................................................................... 14

22             E.      Defendant's Rate Of Success In Obtaining Customer Email
                       Addresses Is Unexpectedly High Due To The Tactics Employed........................ 14
23
       VII.    DEFENDANT'S PERSONAL IDENTIFICATION INFORMATION REQUEST
24             WAS PART OF, NOT INCIDENTAL TO, PLAINTIFF'S TRANSACTION............... 16

25             A.      Obtaining A Transaction Receipt Is Not Incidental To The Transaction. ........... 16

26             B.      Defendant Confuses The Special Purpose Exception With
                       Whether Or Not A Customer Could Reasonably Perceive The
27                     Request As A Requirement To Complete The Transaction................................. 17

28

LINDSAY LAW CORPORATION
21 Natoma Street, Suite 160
Folsom, California 95630

- i -

TABLE OF AUTHORITIES                                    CASE NO.:  2:13-cv-00660-MCE-AC

VIII.   NO BONA FIDE ERROR WAS COMMITTED THAT ENTITLES
        DEFENDANT TO PARTIAL SUMMARY JUDGMENT ............................................. 18

IX.     THE COURT HAS DISCRETION TO GRANT JUDGMENT IN
        FAVOR OF PLAINTIFF ................................................................................................ 20

X.      CONCLUSION ................................................................................................................ 20

1

**TABLE OF AUTHORITIES**

2

**FEDERAL CASES**

3

Davis v. Devanlay Retail Group, Inc., No. 2:11-cv-01719, 2012 WL 6589204
4    (E.D. Cal. Dec. 17, 2012) ........................................................................... 17

5

Dean v. Dick's Sporting Goods, Inc., (D.C. Cal. July 26, 2013) 2013 U.S. Dist.
    Lexis 108549, 2013 WL 3878946 ......................................................... 6, 7

6

Gass v. Best Buy Co., Inc., (C.D. Cal. 2012) 279 F.R.D. 561 ........................... 6, 7, 19

7

Juhline v. Ben Bridge Jeweler, Inc., No. 11-cv-2906-WQH-NLS, 2012
8    WL 3986316 at *5 (S.D. Cal. Sept. 11, 2012) .............................................. 17

9

Korn v. Polo Ralph Lauren Corp., (E.D. Cal. 2008) 644 F.Supp.2d 1212 .............................. 8, 18

10

Watkins v. Autozone Parts, Inc., (S.D. Cal. Sept. 29, 2009) Case No. 08-cv-1509,
    2009 U.S. Dist. Lexis 89745 ....................................................................... 6

11

**STATE CASES**

12

Flores v. Chevron USA Inc., 217 Cal.App. 337 (2013) ........................................... 5

13

Florez v. Linens 'N Things, Inc., (2003) 108 Cal.App.4th 447 ............................. 18

14

People ex rel. Lundgren v. Superior Court, (1996) 14 Cal.4th 294 ...................... 8

15

Pineda v. Williams-Sonoma Stores, Inc., (2011) 51 Cal.4th 524 ...................... 7, 18

16

**FEDERAL CODES**

17

"CAN-SPAM" Act of 2003, 15 U.S.C. § 7701 ...................................................... 2

18

**STATE CODES**

19

California Civil Code § 1747.08 (Song-Beverly Credit Card Act) ..................... passim

20

California Civil Code § 1747.08(a)(1) ............................................................... 7, 8

21

California Civil Code § 1747.08(c)(3)(B) ............................................................... 5

22

California Civil Code § 1747.08(c)(4) ................................................................... 16

23

**FEDERAL RULES**

24

Federal Rules of Civil Procedure, Rule 12(b)(6) .................................................. 1

25

Federal Rules of Civil Procedure, Rule 56(f)(1) ................................................. 20

26

27

28

LINDSAY LAW CORPORATION
21 Natoma Street, Suite 160
Folsom, California 95630

TABLE OF AUTHORITIES          CASE NO.:  2:13-cv-00660-MCE-AC

Plaintiff Robert Capp (hereinafter referred to as the "Plaintiff"), on behalf of himself and all others similarly situated, hereby submits his opposition to Defendant Nordstrom, Inc.'s (hereinafter referred to as the "Defendant" or "Nordstrom") Motion for Summary Judgment or, in the Alternative, for Partial Summary Judgment (hereinafter referred to as the "Motion") as follows:

## I.

## INTRODUCTION

Defendant's Motion for Summary Judgment is both a procedural and substantive failure. Defendant has presented no evidence whatsoever that disputes Plaintiff's claim on any pivotal matter.  In fact, Defendant states repeatedly in its motion that it does not dispute Plaintiff's Complaint, interrogatory responses or deposition testimony.  Instead, Defendant has filed a summary judgment motion on Plaintiff's individual claims that fails to dispute his individual claims but makes the general argument that "no reasonable customer could think that providing an email address was required to complete Plaintiff's transaction."  This is not an individual challenge based upon a more complete factual record; it is a challenge to the Complaint since no evidence was presented to challenge Plaintiff's specific perception.  This is a Rule 12(b)(6) motion to dismiss disguised as a summary judgment motion despite the Court's previous issuance of an order to show cause on this topic as well as the Court's relief to Defendant that, in essence, allowed Defendant to fully brief two separate motions to dismiss.  Defendant's second asserted basis for summary judgment is that "Nordstrom is exempt from liability because e-receipts are a special purpose incidental but related to the credit card transaction."  The presentation of this basis is even more egregious, as it has absolutely nothing to do with a more developed factual record pertaining to Plaintiff's individual claim and the asserted legal defense has already been presented in a previous motion to dismiss and denied.  Finally, Defendant asserts as a basis for partial summary judgment that it is immune from the imposition of the mandatory civil penalty, because a "bona fide error" occurred.  Defendant's contention must fail because the motion does not establish any error at all much less a pivotal error that deviated from Defendant's general policies.

From a substantive standpoint, the motion is simply disingenuous.  Plaintiff has stated multiple times under oath that he felt he needed to provide an email address in order to get his transaction receipt.  Defendant argues that no reasonable person could believe that even though Defendant's own documents clearly establish that Defendant believes it is able to affect a customer's perception and trains its employees to do exactly what was done during Plaintiff's transaction.  Defendant's motion also badly misses the point of the lawsuit.  Plaintiff does not claim that a retailer violates California Civil Code § 1747.08 (Song-Berverly Credit Card Act) every time it requests and records a customer's personal identification information generally or that a violation occurs every time a retailer requests and records a customer's email address so that a receipt can be emailed specifically.  Defendant is violating the law in this case due to the method by which it obtains its customers' information.  Defendant completely ignores the point and simply states that it does not violate the law because it makes clear the "request" is for the purpose of emailing a receipt.  Being sure to reference the phrase "electronic receipt" or something similar does not absolve a retailer from liability and civil penalties.  If the context supports that a reasonable customer might perceive the request as necessary to receive a receipt and thereby complete the transaction, a violation has occurred.  Defendant's motion simply does not get to this issue.  The reason Defendant fails to address this issue is simple:  Defendant's internal documents produced after Plaintiff's deposition completely support Plaintiff's presentation of the facts.

## II.

## PROCEDURAL HISTORY

Plaintiff filed the present action in the Superior Court of California in and for the County of Placer on March 4, 2013.  Defendant removed the action to this Court on April 4, 2013.  Defendant filed a motion to dismiss the action on the grounds that Controlling the Assault of Non-Solicited Pornography and Marketing ("CAN-SPAM") Act of 2003, 15 U.S.C. § 7701, preempts the Song-Beverly Credit Card Act.  The motion alluded to other purported defenses on statutory grounds but stated that those would be presented at a later time.  On May 14, 2013, the Court issued an order to show cause as to why the motion should not be denied.  The Court's

1  order stated that piecemeal motions to dismiss are not allowed and that, in essence, Defendant

2  was requesting an advisory opinion on the preemption issue when any purported statutory

3  defenses were required to be resolved prior to the preemption issue.

4      As an alternative to responding to the order to show cause, Defendant was allowed to file

5  a supplemental motion to dismiss on all purported statutory grounds.  Defendant chose that

6  option and filed a supplemental motion to dismiss of maximum length on its purported statutory

7  defenses.  Defendant's motion to dismiss on statutory grounds argued that: 1) an email address is

8  not personal identification information as defined by the statute; 2) Defendant did not violate the

9  Credit Card Act because Plaintiff did not adequately allege that he perceived Defendant's request

10  for his email address as a condition to obtaining his transaction receipt and completing the

11  transaction; 3) Defendant did not violate the Credit Card Act because requesting and recording a

12  customer's email address in order to email a transaction receipt is exempt from liability as a

13  special purpose incidental to the transaction; and 4) the statute is unconstitutional.

14      The Court denied Defendant's motion to dismiss in its entirety by its order dated October

15  21, 2013.  With regard to Defendant's assertions that Plaintiff did not have a reasonable

16  perception that he needed to provide his email address in order to obtain his receipt and that

17  Defendant's actions are exempt from liability under the special purpose exception to the statute,

18  the Court ruled that these issues "requir[e] further factual development."

### III.

## DEFENDANT'S MOTION IS A BELATED AND REPETITIVE MOTION TO DISMISS NOT BASED UPON A MORE DEVELOPED FACTUAL RECORD

### A.  Defendant Continues To Accept Plaintiff's Allegations In His Complaint As True And Fails To Contest Any Pivotal Fact Relating To His Individual Claim

23      Plaintiff's individual claim in this matter is simple.  He alleged in his Complaint that he

24  purchased merchandise from Defendant's store with a credit card.  He alleged that Defendant's

25  employee requested and recorded his personal identification information in the form of his email

26  address in conjunction with the credit card purchase transaction.  He alleged that the employee

27  stated that the request was being made in order to email his receipt, that he replied he did not

28  want his receipt via email but that the employee made him believe it was necessary in order to

1  get the receipt at all and appropriately complete the transaction.  That is all Plaintiff needed to

2  allege and all that Plaintiff needs to prove in order to perfect his individual claim in this matter.

3        Defendant filed a motion to dismiss, in part, on the grounds that Plaintiff could not have

4  reasonably believed he needed to provide his email address in order to get his receipt and finish

5  the transaction.  The motion was denied with the Court stating that this would turn on evidence

6  with a more fully developed factual record.  What factual record has been developed that would

7  entitle Defendant to judgment?  Defendant states in its moving papers that it does not challenge

8  Plaintiff's allegations.  It is undisputed that Plaintiff entered into a credit card purchase

9  transaction during which his personal identification information was requested and recorded by

10  Defendant.  The factual record Defendant depends upon to claim it is entitled to judgment is

11  centered on two factors: 1) Defendant only requests and records a customer's email address in

12  the context of providing a receipt by email and 2) Plaintiff had additional concerns about not

13  receiving a paper receipt.  Neither of these contentions contribute to a legal determination in this

14  matter.  Plaintiff's Complaint and every statement he had made under oath acknowledges that

15  Defendant's employee made reference to emailing his receipt.  That is not the point of the matter

16  and is not the result of any development of a factual record contemplated by the Court.

17  Likewise, the fact that he was also concerned that the failure to obtain a paper receipt could call

18  into question whether he stole the purchased merchandise means nothing.  It certainly does not

19  mean that he did not believe he had to provide his email address in order to get a receipt

20  ultimately.  In fact, if anything, his concern on this issue clearly supports the fact that it was his

21  belief that he could not obtain a paper receipt and, therefore, was required to provide his email

22  address in order to obtain any receipt at all.  In any event, the reported decisions do not require

23  Plaintiff to have particularized reasons for concern.

24        The end result is that the factual record developed and presented by Defendant does not

25  even amount to a threshold showing that it is entitled to judgment because it does not dispute or

26  establish anything of significance.  Plaintiff's Complaint, interrogatory responses and deposition

27  testimony make abundantly clear that Plaintiff had no desire to provide his email address to

28  Defendant or to receive his receipt by email.  His further uncontradicted statements are that he

1  initially refused to provide his email address, stated that he did not want emails from Defendant

2  and specifically asked for a paper receipt.  His uncontradicted statements are that he was

3  directed, not asked, to provide an email address and did so only because he felt compelled to do

4  so in order to obtain a receipt at all.

5       Instead of directly challenging Mr. Capp's perception, Defendant glosses over it and argues

6  that "no reasonable customer" could have that perception.  The motion is not even presented as a

7  direct attack on Plaintiff's claim because there is not one to be asserted.  This is nothing more than

8  a belated and repetitive motion to dismiss despite the time constraints, the Court's previous order

9  to show cause on the issue, and the Court's previous order on the motion to dismiss.

10 **B.**    **Defendant's Argument That It Is Exempt From Liability Under The Special Purpose Exception Is A Purely Legal Argument That Was Previously Rejected By The Court**

11

12      As part of its previous motion to dismiss, Defendant argued that it was exempt from

13 liability because e-receipts are a special purpose incidental but related to the credit card transaction.

14 The Court denied Defendant's motion and stated that it was "an issue that requires further factual

15 development."  Defendant has presented no facts that support the renewal of this argument.

16      To the contrary, Defendant's argument consists almost exclusively of discussing other

17 cases relating to the statute that have no nexus to the facts of the instant case.  Defendant even

18 cites the exact same cases it cited during its failed motion to dismiss.  Flores v. Chevron USA

19 Inc., 217 Cal.App. 337 (2013) was previously cited by Defendant in its motion to dismiss

20 supplemental reply brief and has no application to this case.  The Chevron case related to a pay-

21 at-the-pump gas station scenario where customers are routinely requested to input a billing ZIP

22 code at unmanned gas station pumps.  The California Legislature specifically amended

23 California Civil Code § 1747.08 in 2011 to authorize this verification process with the addition

24 of subdivision (c)(3)(B).  The California Legislature amended the statute because fraud was

25 extensive in this scenario due to unavailability of the typical protection afforded by subdivision

26 (d).  The Chevron case does not support the position that e-receipts automatically qualify as a

27 special purpose exemption.  There has been no statutory amendment relating to e-receipts and

28 obtaining email addresses to send e-receipts does not meet any fraud prevention objective.

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT OR FOR PARTIAL SUMMARY JUDGMENT
           CASE NO.:  2:13-cv-00660-MCE-AC

1      Defendant, once again, cites the unpublished case <u>Watkins v. Autozone Parts, Inc.</u>, (S.D.

2  Cal. Sept. 29, 2009) Case No. 08-cv-1509, 2009 U.S. Dist. Lexis 89745 which granted summary

3  judgment to defendant on the ground that defendant requesting and recording personal

4  identification information at the point-of-sale for the purpose of registering products for warranty

5  is not a violation of the statute.  There is no connection between <u>Watkins</u> and the present case

6  and this Court obviously saw no connection between these cases sufficient to justify truncating

7  the present case as a matter of law.

8      Defendant, once again, cites <u>Gass v. Best Buy Co., Inc.</u>, (C.D. Cal. 2012) 279 F.R.D.

9  561.  <u>Gass</u> continues to have no application to the instant case, as it merely states that a retailer

10  can request a customer's personal identification information after that customer has indicated he or

11  she is already enrolled in that retailer's customer loyalty club.  <u>Id</u>. at 572-573.  Defendant similarly

12  cites <u>Dean v. Dick's Sporting Goods, Inc.</u>, (D.C. Cal. July 26, 2013) 2013 U.S. Dist. Lexis

13  108549, 2013 WL 3878946 which is another customer loyalty club scenario similar to <u>Gass</u>.

14      Customer loyalty club cases are typical as most of the time a retailer requests and records

15  a customer's personal identification information the purpose is to add that customer to the

16  customer list.  In the present case, despite Defendant's e-receipt subterfuge, Plaintiff was

17  immediately added to Defendant's customer list without his agreement and began receiving

18  promotional emails roughly three times per week.  There is nothing unlawful about signing a

19  customer up for a loyalty program if it is accomplished properly.  It was not in the present case.

20  As the Court stated in <u>Gass</u>, "[s]o long as the customer is aware that he is providing his personal

21  identification information for the incidental purpose rather than for the purpose of completing the

22  credit card transaction, requesting personal identification information for the incidental purpose

23  of enrolling a customer in a rewards program is not a violation of the Act."

24      This highlights the problem for Defendant in this case.  <u>Gass</u> and <u>Dean</u> are not applicable.

25  Unlike <u>Gass</u> and <u>Dean</u>, Defendant's employee in this case did not ask Mr. Capp "Would you like

26  to have your receipt emailed to you?"  That is a yes or no question that is not tied to completing

27  the transaction.  Instead, the uncontradicted factual record here is that Defendant's employee

28  asked Plaintiff for his email address, Plaintiff initially refused to provide it stating that he did not

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT OR FOR PARTIAL SUMMARY JUDGMENT

CASE NO.:  2:13-cv-00660-MCE-AC

want emails and wanted a paper receipt.  Defendant's employee then directed him to provide an email address so that his receipt could be emailed.  Plaintiff clearly did not want to provide his email address, did not want his receipt delivered by email and only provided it because he was made to believe he could not get a transaction receipt unless he provided it.  Plaintiff walked out of the store without a paper receipt even though he asked for one.  Neither <u>Gass</u> nor <u>Dean</u> supports the lawfulness of Defendant's action.  In fact, there is not a single case decided under this statute that supports the lawfulness of Defendant's actions.

**IV.**

**THE CREDIT CARD ACT IS TO BE INTERPRETED BROADLY**
**TO EFFECTUATE ITS CONSUMER PROTECTION OBJECTIVE**

As it did with its motion to dismiss, Defendant now presents a statutory interpretation question to this Court without referencing the history and objectives of the Credit Card Act or the unanimous California Supreme Court decision in <u>Pineda v. Williams-Sonoma Stores, Inc.</u>, (2011) 51 Cal. 4th 524.  This, of course, is not surprising because none of the paradigm cases relating to the Act are helpful to Defendant.

Through its collection of Plaintiff's email address, Defendant has violated California Civil Code § 1747.08(a)(2) which states:

> "(a)    Except as provided in subdivision (c), no person, firm, partnership, association, or corporation that accepts credit cards for the transaction of business shall do any of the following: …

> …(2)  Request, or require as a condition to accepting the credit card as payment in full or in part for goods and services, the cardholder to provide personal identification information, which the person, firm, partnership, association, or corporation accepting the credit card writes, causes to be written, or otherwise records upon the credit card transaction form or otherwise…."

The legislative history on the "condition" clause is thoroughly discussed in <u>Pineda</u>.  In essence, when the statute was passed in 1990, this clause opened subdivisions (a)(1) and (a)(2).  The word "request" was not included in those subdivisions.  Because retailers were "end-running" the Statute by making requests and claiming the responses were voluntary, the Legislature amended the Statute the next year, 1991, to include the word "request" and thereby make clear that it is a violation to request and record personal identification information.  <u>Pineda</u>, *supra*, 51 Cal.4th at 534-535.  The

1  Legislature added "request" at the very beginning of the subdivisions and left the clause containing

2  the word "condition" completely set apart by commas.  Subdivisions (a)(1) and (a)(2) can be read

3  and understood by ignoring the "condition" clause making that clause linguistically non-essential.

4      The Statute existed in that fashion with no interpretation until the California Court of

5  Appeals decision in <u>Florez v. Linens 'N Things, Inc.</u>, (2003) 108 Cal.App.4th 447.  This was the

6  first reported decision to address the legislative history and interpretation of California Civil

7  Code § 1747.08.  Although Defendant in that matter was requesting and recording customer

8  telephone numbers, Defendant argued that it was not actually requiring a response and was,

9  therefore, not violating the law.  The Court, attempting to provide continued meaning to the

10  "condition" clause, stated as part of its decision that a violation occurred so long as a customer

11  could reasonably perceive the request for personal identification information as a condition to the

12  transaction.  <u>Florez</u>, *supra*, 108 Cal.App.4th at 451.  The "reasonable perception" language in

13  <u>Florez</u> has been followed on several occasions including by this Court in <u>Korn v. Polo Ralph</u>

14  <u>Lauren Corp.</u>, (E.D. Cal. 2008) 644 F.Supp.2d 1212.

15      The California Supreme Court began its discussion in <u>Pineda</u> by acknowledging that the

16  Song-Beverly Credit Card Act is "designed to promote consumer protection."  <u>Pineda</u>, *supra,* 51

17  Cal. 4th at 527 (quoting <u>Florez v. Linens 'N Things, Inc.</u>, (2003) 108 Cal.App.4th 447, 450).

18  The <u>Pineda</u> court further acknowledged that it is "the general rule that civil statutes for the

19  protection of the public are, generally, broadly construed in favor of that protective purpose."

20  <u>Pineda</u>, *supra*, 51 Cal.4th at 530 (quoting <u>People *ex rel.* Lundgren v. Superior Court</u>, (1996) 14

21  Cal.4th 294, 313).  The <u>Pineda</u> court also concluded that the Legislature's 1991 revision to

22  clarify that a request for information is violative of the Act established that the Legislature

23  "intended to provide robust consumer protections by prohibiting retailers from soliciting and

24  recording information about the cardholder that is unnecessary to the credit card transaction."

25  <u>Pineda</u>, *supra,* 51 Cal.4th at 536.  The California Legislature has made clear that it does not want

26  retailers collecting credit card data along with other personal identification information.  As

27  Plaintiff established at the motion to dismiss stage, the California Supreme Court has made

28  abundantly clear that it is not looking for ways to limit the application of this statute holding that

    

it is a violation of the Act to request and record personal identification information that "could easily be used to locate the cardholder's complete address or telephone number" (Pineda, *supra*, 51 Cal.4th at 533) or is "information unnecessary to the sale transaction that, alone or together with other data such as a cardholder's name or credit card number can be used for the retailer's business purpose." (*Id*. at 532).

Defendant is doing exactly what the unanimous California Supreme Court said it could not. It is requesting and recording information that is unnecessary to the credit card transaction and using it for its own business purpose. It is doing so without informing the customer as well. Furthermore, as established previously during the motion to dismiss phase, the email address information can be used to obtain further information about the cardholder. It is also now acknowledged by Defendant that it keeps the customer's credit card information stored with the email address.

## V.

### THE PRIMARY PURPOSE OF DEFENDANT'S E-RECEIPT PROGRAM IS TO GAIN CUSTOMER PERSONAL IDENTIFICATION INFORMATION AND INCREASE PROFIT

Defendant has consistently argued in its various papers to the Court that this lawsuit is a baseless attack on legitimate commerce. Defendant's papers, including the present moving papers, tend to discuss how Defendant is saving the environment and benefitting its customers through its e-receipt program. To be blunt, the only green Defendant cares about is the green in its corporate wallet. This point is made abundantly clear in the documents prepared by Defendant relating to the roll-out of the e-receipt program. For instance, Defendant produced a training document entitled "Spring Release 2011/e-Receipt Phased Roll-out February 21-March 2" that leads with the following language (emphasis in original):

> "**Align with the Company's strategic initiative to acquire and retain customers:**
>
> > The most effective way of gathering and retaining new customers is through the corporate email marketing campaign. E-receipt provides Nordstrom the opportunity to gain new marketing email addresses as well as update existing invalid email addresses with all Point of Sale financial transactions.

> Today, Nordstrom currently has marketable email addresses for 22% of all customers and by increasing this by 2% through the e-Receipt project, we will have the ability to market to an additional 185K customers, generating $5.5M in incremental revenue (average annual)…."[1]

Another training document provided to cashiers is slightly more direct by stating:

"The average customer spends $23 more a year when their (sic) email address is captured. The easiest way to capture a customer's email address is by completing an e-Receipt transaction. This means … capture a customer's Email Address and earn your store an additional $23/year. How many new customer email addresses did you capture today? It adds up fast."

It is not illegal or even a dirty concept to make money. It is disingenuous, however, for Defendant to present the matter in the context of saving the environment one printed receipt at a time. The reality is that Defendant desires to increase its customer list and does so by making its customers believe they need to participate in the e-receipt program in order to obtain a receipt and complete the transaction. This is patently illegal in California during a credit card purchase transaction.

## VI.

### PLAINTIFF'S STORE EXPERIENCE WAS NOT UNIQUE AS DEFENDANT'S SPECIFIC POLICY IS TO AFFECT ITS CUSTOMERS' PERCEPTION AS TO THE NECESSITY OF PROVIDING AN EMAIL ADDRESS

**A.** **Defendant Trains Its Employees To Not Ask For An Email Address But Instead Direct that An Email Address Be Provided**

Plaintiff alleged in his Complaint and has since repetitively stated under oath that he felt compelled to provide his email address in order to obtain a transaction receipt. Plaintiff was deposed on September 15, 2014. During the deposition, Plaintiff was questioned about the manner in which Defendant's employee requested his email address. Specifically, there was a fairly lengthy discussion regarding whether the employee asked for his email address or made a directive to provide the email address. That portion of the transcript reads as follows:

---

[1] Defendant produced one set of documents in this matter marked NORD0001-0407 along with some natively-produced documents on October 2, 2014. Each of the documents was marked with the same "Confidential" stamp. Defendant publicly filed many of these documents with its moving papers stating its willingness "to submit them without requesting a sealing order to avoid burdening the Court." (See Nordstrom, Inc.'s Statement of Undisputed Facts, p. 9, fn. 1). Plaintiff acts accordingly in this matter, as he also wishes to avoid burdening the Court and has no interest in taking greater steps to protect the alleged confidentiality of Defendant's documents than those taken by Defendant itself.

"Q. I want to reference you to Exhibit 2, which are the interrogatory responses. If you would turn to page 3 and look at the response to interrogatory No. 1.

You can take a moment to read it. This is a summary that you had provided with your interrogatory responses about what happened that day.

(Witness reviewing document.)

A. Okay.

Q. Okay. If you look at the interrogatory response, you will see that there was a statement at lines 20 and 21 saying, "Shortly after I handed the cashier the merchandise to scan, the cashier said something to the effect of," and this is in quotes, "Can I have your e-mail address, please? End Quote. Do you see that?

A. Uh-huh.

Q. Was that a Yes?

A. Yes. I'm sorry. Yes, I do."

Q. So did the salesperson ask you as a question? "Can I have your e-mail address, please?"

A. Initially, yes.

Q. So it was a question?

A. Uh-huh.

Q. Not a statement?

A. It didn't have the lilt of a question as much as, "Can I have your e-mail, please."

Are you familiar with the fine-tuning of the English language, in that if you put a lilt on it, it sounds like a question; if you don't, it sounds more like a statement.

It was more like a statement. "Can I have your e-mail, please." Which technically is a question. But without the lilt, it could – I don't know. It sounded more like, I need your e-mail address, Bob.

And I said, "No, thank you."

BY MR. NGYUEN:

Q. And you say "technically that's a question," but that has the word "can" in it?

A. Yes. She either used "can" or "may."

Q. And when you wrote about that conversation in this interrogatory response, you used a question mark at the end of that sentence –

A. Uh-huh.

Q. – is that right? Do you see here?

A. Yes, I do.

Q. At the end of that paragraph there are sentences that say, "The cashier then followed up by stating something similar to, 'I need your e-mail address in order to e-mail your receipt.' I provided my e-mail address as a result of this representation, and the remainder of the transaction proceeded in typical fashion."

Do you see that?

A. Yes.

Q. What do you mean by the statement, "I provided my e-mail address as a result of this representation"?

A. When she said, "I need your e-mail address," and I wanted a receipt for the reasons I said earlier about, you know, returns, and stuff. Heidi has a good sense of sizing, and stuff, but, you know, Charlotte has a sense of what she really likes herself.

I knew I needed a receipt. So I felt like if I don't give her my e-mail address, I don't know if I'm going to have a receipt. Even a gift receipt would have been great. But – did that answer your question?

Q. It does. Partly.

I'm just curious what you mean by the phrase, "As a result of this representation"?

MR. LINDSAY:     Is there a statement about what –

THE WITNESS:     Yeah. When – when she represented that I need your e-mail receipt – or I need your e-mail address to send you a receipt, that's what I mean by the "result of that representation."

She represented that – that Nordstroms, she, working for Nordstroms, needed that to complete the transaction to get that receipt. So if, you know, we need to return something, we had that available to do.

BY MR. NGYUEN:

Q. And it was the representation that you say here in interrogatory No. 1's answer, "I need your e-mail address in order to e-mail you a receipt"? Is it that representation that you're talking about, and that's why you gave her your e-mail address?

A. Uh-huh.

Q. Was that "Yes"?

A. Yes. I'm sorry. I apologize.

The full significance of this discussion only became apparent when Defendant finally served the relevant employee training documents on or about October 1, 2014. Those training documents make clear that Defendant's employees are trained to not ask whether a customer wants to provide his or her email address or whether an e-receipt is desired. Although certain documents discuss a certain amount of latitude in phrasing the email address request, the basic

- 12 -

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT OR FOR PARTIAL SUMMARY JUDGMENT

CASE NO.:  2:13-cv-00660-MCE-AC

script provided to employees simply states, "Say, 'What email may I send your receipt to?'" This phrasing is clearly designed to make the customer believe that a response is necessary in order to get a receipt.  Most importantly, there is nothing in the basic script that announces the options or the objective causing any affirmative response to be obviously voluntary or made from customer choice.

In the event that the Court thinks the script is cryptic, Defendant's motives are made clear by its internal communications.  An example of this is an email dated October 19, 2011 authored by Mariya Rubbelke to various higher level managers on the subject that states as follows:

> **"…With every customer, we should be saying (not asking), 'What email address would you like your receipt sent to.'"** (emphasis in original)

Defendant's contention in this motion that "no reasonable customer could think that providing an email address was required to complete Plaintiff's transaction" is laughable when Defendant's internal documents make clear that it is Defendant's goal to affect customer perception by making the "request" a statement and not a question.

**B.**   **Plaintiff Made His Preference Known By Initially Refusing Defendant's Request**

It is an undisputed fact that Plaintiff initially refused Defendant's request for his email address.  Neither the statutory language nor any interpretive case law requires the customer to refuse to respond to Defendant's request for personal identification information.  A violation of the statute occurs if the customer responds to a request that could be reasonably perceived as a requirement to complete the transaction.  In the present case, however, the uncontroverted evidence is that Plaintiff actually went as far as to initially refuse Defendant's request.  It was only after further discussion forwarded by Defendant's employee that Plaintiff ultimately relented and provided his email address.  There is no evidence that has been presented that Plaintiff suddenly desired to provide his email address or receive his receipt via email.  To the contrary, the evidence is clear and uncontradicted that Plaintiff did not want to provide his email address and wanted a paper receipt.

**C.**   **Defendant's Employees Are In Complete Control Of The Email Address Request And Are Additionally Allowed Some Discretion In The Manner Of Request.**

Defendant makes reference in its moving papers to other retailers that offer e-receipts. The retailers that offer e-receipts typically not only clearly request whether or not the customer

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY          CASE NO.:  2:13-cv-00660-MCE-AC
JUDGMENT OR FOR PARTIAL SUMMARY JUDGMENT

1  wants an e-receipt by asking, "Would you like your receipt emailed?" but also the retailers

2  typically ask the question on a pin-pad controlled by the customer.  In doing so, the customer can

3  easily answer yes or no and will only receive an email address request if that customer

4  affirmatively responds on the customer-controlled pin-pad to the clear question of whether he or

5  she desires an e-receipt.  Defendant has not structured its point-of-sale in that fashion.  Here,

6  Defendant's employee is in full control of the request and how it is made and is also in control of

7  inputting the response.  Therefore, even if Defendant's general policy of requesting the

8  information was in compliance with the law (which, in this case, it is clearly not) Defendant has

9  created a mechanism that can be completely manipulated by its employees.  Defendant's

10  employees can say whatever they want and ultimately make some claim to the customer that an

11  email address is needed.

12       Defendant points out several times in its moving papers that Defendant's employees have

13  some discretion with customers as to how the email address request is posed.  It is unclear why

14  Defendant believes that is a positive attribute of its policy. A company that is attempting to comply

15  with the law will have solid general policies with a clear script while granting their employees no

16  discretion to deviate from that script.  Here, we have the previously unimaginable scenario of an

17  aggressively unlawful general policy, a deceptive script and employee discretion to improvise.

18  **D.**     **Defendant Provides Incentive To Its Employees To Obtain Customer Email Addresses**

19       To further compound the impropriety of granting discretion to its employees, Defendant

20  provides incentives for obtaining customer email addresses.  Furthermore, Defendant's employees'

21  performance reviews note whether or not email address goals have been achieved.  As a result, the

22  training materials that encourage and direct employees to obtain email addresses in every

23  transaction are backed up by both a carrot and a stick.  Therefore, Defendant's employees have

24  personal motivation to do whatever possible to obtain a customer's email address.

25  **E.**     **Defendant's Rate Of Success In Obtaining Customer Email Addresses Is**
      **Unexpectedly High Due To The Tactics Employed.**

26

27       Defendant asserts in its papers that no reasonable customer could perceive Defendant's

28  request for an email address as necessary to complete the transaction because allegedly only 30%

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT OR FOR PARTIAL SUMMARY JUDGMENT

CASE NO.:  2:13-cv-00660-MCE-AC

of transactions result in a receipt being emailed to the customer.  The assertion misses the point, legally and factually, and, in any event, only serves to establish the unusual success of its program.

The fact that many customers do not provide an email address in inconsequential.  Some people do not have computers or email addresses.  Some cashiers may fail to ask or ask in a way that provides the customer understanding that it is a choice.  Some customers may refuse even if the cashier continues to apply pressure.  No retailer ever actually conditions a response to its request for personal identification information in order to complete a basic purchase transaction, and this is not the legal standard.  Again, the legal standard is whether a customer might reasonably perceive that a response is necessary.  As stated in earlier sections, the answer to that question lies in the language of the request; however, the numbers in this case illustrate a much greater response level as well that supports the conclusion that customers feel compelled to respond.

Although numbers vary somewhat among retailers, according to Experian and other reputable companies that study the issue, on average, less than 15% of customers affirmatively respond to a retailer's request for that customer's email address at the point-of-sale.  This typical success rate is supported by Defendant's e-receipt roll-out documents mentioned earlier that it had email addresses for 22% of its customers.  This 22% number would include customers who shopped online or by other methods where an email address was automatically obtained.  Furthermore, Ms. Rubbelke's internal memorandum mentioned earlier discusses "improvements" and sets usage expectation of e-receipts at 25%.  It has now been revealed by Ms. Baldwin that Defendant receives a 30% usage rate in the e-receipt program.

In the process of making the legally irrelevant argument that many customers do not complete an e-receipt transaction, Defendant has made it clear that customer response rate has improved far beyond industry standards and well above Defendant's established goals for improvement.  The response rate is due to Defendant's tactics as testified by Mr. Capp and corroborated by Defendant's training materials and Ms. Rubbelke's directive as contained in her email to management personnel.

The significantly increased response rate at the point-of-sale is extremely meaningful.  As stated in Defendant's initial roll-out documents, Defendant stated that an increase of 22% to 24%

- 15 -

1   would increase the customer list by 185,000 and revenue by $5.5 million annually.  Ms.

2   Rubbelke's email roughly nine months later set an improved usage rate of 25%.  Now, the usage

3   rate is apparently 30%.  The result in increase to the customer list and revenue is staggering.

**VII.**

**DEFENDANT'S PERSONAL IDENTIFICATION INFORMATION REQUEST
WAS PART OF, NOT INCIDENTAL TO, PLAINTIFF'S TRANSACTION**

7            As stated earlier, Defendant again makes the argument that its request for Plaintiff's

8   personal identification information was for a special purpose incidental to the transaction even

9   though this exact same argument was rejected by the Court over a year ago when assessing

10   Defendant's motion to dismiss.  In addition to being cumulative, the contention is simply wrong.

11            Defendant's argument is that its actions fit within the statutory exception contained in

12   Section 1747.08.08(c)(4).  That subdivision allows for Defendant to escape liability "if personal

13   identification information is required for a special purpose incidental but related to the individual

14   credit card transaction, including, but not limited to, information relating to shipping, delivery,

15   servicing, or installation of the purchased merchandise, or for special orders."  Defendant's

16   actions do not fit within this exception for an assortment of reasons.

**A.      Obtaining A Transaction Receipt Is Not Incidental To The Transaction.**

18            Obtaining a transaction receipt is the expectation of every single customer at Defendant's

19   store and every single customer at ever other retailer's store.  Transaction receipts are not only a

20   customer's proof of payment but also proof of the specific amount the customer paid.  If the

21   merchandise needs to be returned, for whatever reason, the receipt is the only mechanism to ensure

22   a successful return at the actual price paid for the merchandise.  Defendant cites authority for the

23   proposition that, under specific circumstances, personal identification information requests to

24   register a person for a loyalty club or to register a product for warranty can be considered

25   incidental to the transaction.  Defendant cites no authority, however, for the proposition that

26   obtaining a receipt for the transaction is incidental to the transaction.  To the contrary, multiple

27   discussions have indicated that obtaining the receipt is a pivotal part of the transaction.  Juhline v.

28   Ben Bridge Jeweler, Inc., No. 11-cv-2906-WQH-NLS, 2012 WL 3986316 at *5 (S.D. Cal. Sept.

1  11, 2012); <u>Davis v. Devanlay Retail Group, Inc.</u>, No. 2:11-cv-01719, 2012 WL 6589204 (E.D. Cal.

2  Dec. 17, 2012).  The differentiation comports with common sense.  If presented as a choice,

3  customers often refuse to join customer loyalty clubs or even register products for warranty at the

4  point-of-sale.  Nobody refuses a receipt for a transaction at a clothing store.

5  **B.    Defendant Confuses The Special Purpose Exception With Whether Or Not A Customer Could Reasonably Perceive The Request As A Requirement To Complete**

6  **The Transaction.**

7        Defendant improperly presents the generalized theory that an e-receipt automatically

8  qualifies for exception as a special purpose incidental to the transaction.  Defendant presents this

9  exception as an alternative basis for judgment despite Plaintiff's reasonable belief he needed to

10  affirmatively respond to Defendant's personal identification information request in order to

11  complete his transaction.  Defendant's presentation would have the exception swallow the rule.

12        Defendant's argument goes something like the following:  "We offer e-receipts to our

13  customers.  In order to send an e-receipt, we have to obtain the customer's email address.  It does

14  not matter how we present our request because providing a receipt is incidental to the

15  transaction, and our request is for the special purpose of providing that receipt through email."

16        This is not even close to the law on this topic, because, if it were, a retailer could ask for

17  anything it wanted and just claim that the request was for an incidental purpose. Retailers could ask

18  for home addresses because they say they need to mail the receipt.  They could request telephone

19  numbers in the event it is later discovered the customer left something in the store.  They could

20  request social security number in order to perform credit checks prior to offering a credit card.

21        These cases are almost always about increasing mailing lists and customer loyalty clubs,

22  and this case is not different.  Defendant's documents relating to the roll-out of its e-receipt

23  program and the fact that Plaintiff was emailed not less than 59 times over the nineteen week

24  period between January 1, 2013 and May 14, 2013 demonstrate the true nature of the case.  As

25  an interesting aside, Defendant trains its employees to deceive customers regarding the

26  frequency of follow-up emails if the customer asks the question.  The materials show that

27  employees are trained to tell customers who express concerns about follow-up emails that the

28  frequency will be no more than one email per week.  Although the topic was not specifically

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY       CASE NO.:  2:13-cv-00660-MCE-AC
JUDGMENT OR FOR PARTIAL SUMMARY JUDGMENT

1    discussed at all during Plaintiff's transaction, he ultimately received emails at a frequency three

2    times greater until Defendant removed him from the mailing list.

3           In any event, the cases do not hold that a mailing list/customer loyalty club is a special

4    purpose and that a request for that purpose is incidental causing such request to be an exception

5    to liability.  The key is always <u>how</u> the request is being presented.  This is the reason <u>Pineda v.</u>

6    <u>Williams-Sonoma Stores, Inc.</u>, (2011) 51 Cal.4th 524, <u>Florez v. Linens 'N Things, Inc.</u>, (2003)

7    108 Cal.App.4th 447 and <u>Korn v. Polo Ralph Lauren Corp.</u>, (E.D. Cal. 2008) 644 F.Supp.2d

8    1212 were decided the way they were decided.  Defendant points to <u>Gass</u> as holding that a

9    request to join a customer loyalty program is an exception to liability but Defendant in this case

10   confuses the issues.  The <u>Gass</u> court ruled that Defendant's customers could not reasonably

11   perceive Defendant's request as a condition to completing the transaction.  For the reasons stated

12   in preceding sections, the Court cannot come to such a conclusion as to Mr. Capp's transaction

13   or anyone else's for that matter due to Defendant's improper general policy, suggested script,

14   failure to gain affirmative understanding from the customer and the granting of discretion to

15   employees to control the process and deviate their requests as they deem necessary.

16                                              **VIII.**

17                          **<u>NO BONA FIDE ERROR WAS COMMITTED</u>**
                     **<u>THAT ENTITLES DEFENDANT TO PARTIAL SUMMARY JUDGMENT</u>**
18

19           Lastly, Defendant alternatively argues that, even if the request made of Mr. Capp was in

20   violation of the Credit Card Act, it is entitled to partial summary judgment and no imposition of

21   civil penalty because Defendant's employee's actions were the result of a bona fide error in

22   contravention of Defendant's general policies adopted to avoid such error.  Defendant's alleged

23   defense must fail because Defendant does not identify any material error allegedly committed by

24   its employee and, in any event, Defendant's general policies violate the Act.

25           The crux of Defendant's argument is that Plaintiff claims he was requested to provide his

26   email address generally and refused before acquiescing to a second request.  Defendant claims

27   this was an error because Defendant trains its employees to only request an email address while

28   mentioning the e-receipt program and does not train its employees to make multiple requests.

1  Plaintiff's refusal to provide his email address with the first, generalized request shows his lack

2  of interest in providing his email address; nevertheless, this was not a material error since

3  Plaintiff did not affirmatively respond to it.  Plaintiff only responded when Defendant's

4  employee made the subsequent request that made Plaintiff believe he had to provide it in order to

5  obtain his receipt.  Therefore, Defendant's employee's allegedly rogue initial request was

6  unsuccessful and immaterial as a result.  Due to this fact, Defendant has failed to identify any

7  bona fide error allegedly made by Defendant's employee that caused Plaintiff's response in a

8  fashion not contemplated by Defendant's general policies.

9        In the end, Defendant's employee utilized Defendant's general policies to obtain a

10  response, and those general policies are in violation of the Act.  Defendant's general policy is

11  clear:

12        1.  Obtain an email address in every transaction possible;

13        2.  Direct, not ask, the customer to provide an email address by saying, not
            asking, "What email address would you like your receipt sent to.;"

14        3.  Fail to mention that a printed receipt is an available option or that the customer
            will be added to Defendant's mailing list; and

15

16        4.  Allow its employees complete control over the request process and grant
            them discretion to make the request in the manner they see fit.

17        This was the policy that was followed by Defendant's employee during Plaintiff's

18  transaction.  The unlawful action was not due to Defendant's employee; it was due to

19  Defendant's general policy that fails to obtain informed consent and is designed to be deceptive

20  and cause customers to believe they need to obtain their receipt of the transaction by email.

21        All of the evidence in this matter points to the fact that Defendant does not want its

22  customers to say no to this request.  The company is motivated by large dollar signs, and its

23  employees are motivated by benefits and employee reviews.  Defendant trains its employees to

24  not ask if a customer would like an emailed receipt or to provide their email address for any

25  other reason.  The basic script and direction is to direct, not ask, for the email address.  If the

26  customer expresses concerns about the matter, Defendant's employees are granted latitude to

27  handle the matter and, in some instances, Defendant will go as far as to send a manager to the

28  customer in an attempt to gain compliance.  Defendant avoids the subject of subsequent

- 19 -

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY             CASE NO.:  2:13-cv-00660-MCE-AC
JUDGMENT OR FOR PARTIAL SUMMARY JUDGMENT

1  promotional emails, but, if asked, Defendant trains its employees to lie about the frequency such

2  emails will be sent.  The level of deceptiveness of Defendant's general policy is astounding.

### IX.

### THE COURT HAS DISCRETION TO GRANT JUDGMENT IN FAVOR OF PLAINTIFF

6          Federal Rules of Civil Procedure, Rule 56(f)(1) affords the court discretion to grant

7  judgment in favor of a nonmovant.  Presumably, Defendant made the best case it could for

8  judgment and only confirmed that Plaintiff completed a credit card transaction wherein his

9  personal identification information was requested and recorded in a manner that created

10  reasonable perception that a response was necessary to complete the transaction.  There seems to

11  be no reason to waste more time litigating Defendant's liability on Plaintiff's individual

12  transaction.  Granting judgment in favor of Plaintiff would promote judicial economy.

### X.

### CONCLUSION

15          In conclusion, Defendant has presented no evidence to deny Plaintiff's individual claim

16  in this matter.  Defendant presents no evidence that Plaintiff's transaction did not proceed as he

17  has alleged on numerous occasions.  Plaintiff entered into a credit card transaction and

18  Defendant requested and recorded his personal identification information in a manner that caused

19  him to reasonably believe a response was necessary.  Defendant then used Plaintiff's information

20  for its own separate business objective.  This is a clear violation of the Credit Card Act and no

21  case has ever held otherwise.  More specifically, there is absolutely no basis to believe that, after

22  Pineda, the California Supreme Court would rule in favor of Defendant.  Accordingly, this

23  motion must be denied.

24  Dated:  October 30, 2014                    LINDSAY LAW CORPORATION

26                                                          By:    /s/James M. Lindsay
27                                                          James M. Lindsay
                                                              jlindsay@lindsaylawcorporation.com
28                                                          Attorneys for Plaintiff and the Class

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY          CASE NO.:  2:13-cv-00660-MCE-AC
JUDGMENT OR FOR PARTIAL SUMMARY JUDGMENT